INTERNATIONAL HARVESTER CO. ET AL. *v.*
DEPARTMENT OF TREASURY ET AL.

No. 355. Argued February 29, 1944.—Decided May 15, 1944.

Messrs. *Edward R. Lewis* and *Joseph J. Daniels* for appellants.

Messrs. *Winslow Van Horne* and *John J. McShane,* Deputy Attorneys General of Indiana, with whom *Mr. James A. Emmert,* Attorney General, and *Messrs. Joseph W. Hutchinson* and *Fred C. McClurg,* Deputy Attorneys General, were on the brief, for appellees.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

This case raises questions concerning the constitutionality of the Indiana Gross Income Tax Act of 1933 (L. 1933, p. 388, Burns Ind. Stats. Ann. § 64–2601) as construed and applied to certain business transactions of appellant companies. The suit was brought by appellants to recover gross income taxes paid to Indiana during the years 1935 and 1936. The Indiana Supreme Court sustained objections to the imposition of the tax on certain sales but allowed the tax to be imposed on other types of transactions. 221 Ind. 416, 47 N. E. 2d 150. The correctness of the latter ruling is challenged by the appeal which brings the case here. Judicial Code § 237, 28 U. S. C. § 344 (a), 28 U. S. C. § 861 (a).

Appellants are corporations authorized to do business in Indiana but incorporated under the laws of other States. They manufacture farm implements and motor trucks and sell those articles both at wholesale and retail. During the period here in question they maintained manu-

facturing plants at Richmond and Fort Wayne, Indiana and selling branches at Indianapolis, Terre Haute, Fort Wayne, and Evansville, Indiana. They also had manufacturing plants and sales branches in adjoining States and elsewhere. Each branch had an assigned territory. In some instances parts of Indiana were within the exclusive jurisdiction of branch offices which were located outside the State. The transactions which Indiana says may be taxed without infringement of the federal Constitution are described by the Indiana Supreme Court as follows:

*Class C:* Sales by branches located outside Indiana to dealers and users residing in Indiana. The orders were solicited in Indiana and the customers took delivery to themselves at the factories in Indiana to save time and expense of shipping.[1]

*Class D:* Sales by branches located in Indiana to dealers and users residing outside of Indiana, in which the customers came to Indiana and accepted delivery to themselves in this state.[2]

*Class E:* Sales by branches located in Indiana to dealers and users residing in Indiana, in which the

[1] The stipulation states that the "orders and contracts were accepted by branches outside Indiana" and payments "were received by branches outside Indiana." The Class C sales were principally sales of motor trucks manufactured at Fort Wayne and a small amount of goods manufactured at Richmond. In case of wholesale sales it is the custom for the dealer to notify the company at the time he desires delivery that he wants to take delivery of the goods himself at Fort Wayne or Richmond. In the case of retail sales in Class C, "if the user desires to undertake transportation of the goods to their destination and for that purpose to take delivery at the factory in Indiana, it is the business practice for the contract or order so to state."

[2] The stipulation states that the "orders or contracts were accepted and the sales proceeds were received by the Branch Managers at the branches located within Indiana." The business custom or practice respecting deliveries in the State to dealers or retail purchasers was the same as in case of the Class C sales.

goods were shipped from points outside Indiana to customers in Indiana, pursuant to contracts so providing.[3]

The gross income tax[4] collected on those transactions is the same one which was before this Court in *Depart-*

[3] The stipulation states that the goods in this class were shipped by the company from outside the State, the order or contract specifying that "shipment should be made from a point outside Indiana to the purchaser in Indiana." In these cases, moreover, the orders were "solicited from purchasers residing in Indiana by representatives of Indiana branches, or the orders or contracts were received by mail by Indiana branches. The orders and contracts were accepted by the Branch Manager at branches located within Indiana. Payments of the sales proceeds were received by branches in Indiana. The sales in this class were of goods manufactured outside the State of Indiana."

There was no showing, moreover, that goods in this class were of kind that could be obtained only outside Indiana. It seems to be admitted that Class E sales arose when an Indiana branch received orders for goods in quantities which could not be economically carried in stock or where a cheaper freight rate could be obtained by direct shipments from outside Indiana. Cf. *Bowman* v. *Continental Oil Co.,* 256 U. S. 642; *Sonneborn Bros.* v. *Cureton,* 262 U. S. 506.

[4] Sec. 2 of the Act provided in part: "There is hereby imposed a tax, measured by the amount or volume of gross income, and in the amount to be determined by the application of rates on such gross income as hereinafter provided. Such tax shall be levied upon the entire gross income of all residents of the state of Indiana, and upon the gross income derived from sources within the state of Indiana, of all persons and/or companies, including banks, who are not residents of the state of Indiana, but are engaged in business in this state, or who derive gross income from sources within this state, and shall be in addition to all other taxes now or hereafter imposed with respect to particular occupations and/or activities." The language of this section was recast by L. 1937, c. 117, § 2, p. 611.

Sec. 6 (a) of the Act exempted "so much of such gross income as is derived from business conducted in commerce between this state and other states of the United States, or between this state and foreign countries, to the extent to which the state of Indiana is prohibited from taxing under the Constitution of the United States of America." And see L. 1937, c. 117, § 6, p. 615.

*ment of Treasury* v. *Wood Preserving Corp.,* 313 U. S. 62, and *Adams Mfg. Co.* v. *Storen,* 304 U. S. 307. The tax was described in the *Storen* case as "a privilege tax upon the receipt of gross income." 304 U. S. p. 311. In that case an Indiana corporation which manufactured products and maintained its home office, principal place of business, and factory in Indiana sold those products to customers in other States and foreign countries upon orders taken subject to approval at the home office. It was held that the Commerce Clause (Art. I, § 8 of the Constitution) was a barrier to the imposition of the tax on the gross receipts from such sales. But as we held in the *Wood Preserving Corp.* case, neither the Commerce Clause nor the Fourteenth Amendment prevents the imposition of the tax on receipts from an intrastate transaction even though the total activities from which the local transaction derives may have incidental interstate attributes.

The objections under the Commerce Clause and the Fourteenth Amendment to the tax on the receipts from the three classes of sales involved here are equally without merit.

In the *Wood Preserving Corp.* case contracts were made outside Indiana for the sale of railroad ties. The respondent-seller, a Delaware corporation with its principal place of business in Pennsylvania, obtained the ties from producers in Indiana and delivered them to the buyer (Baltimore & Ohio Railroad Co.) in Indiana who immediately loaded them on cars and shipped them out of the State. Payments for the ties were made to the seller in Pennsylvania. We held that Indiana did not exceed its constitutional authority when it laid the tax on the receipts from those sales.

We see no difference between the sales in the *Wood Preserving Corp.* case and the Class C sales in the present one which is translatable into a difference in Indiana's

power to tax. The fact that the sales in Class C are made by an out-of-state seller and that the contracts were made outside the State is not controlling. Here as in the *Wood Preserving Corp.* case, delivery of the goods in Indiana is an adequate taxable event. When Indiana lays hold of that transaction and levies a tax on the receipts which accrue from it, Indiana is asserting authority over the fruits of a transaction consummated within its borders. These sales, moreover, are sales of Indiana goods to Indiana purchasers. While the contracts were made outside the State, the goods were neither just completing nor just starting an interstate journey. It could hardly be maintained that Indiana could not impose a sales tax or a use tax on these transactions. But, as we shall see, if that is the case, there is no constitutional objection to the imposition of a gross receipts tax by the State of the buyer.

The Class D sales are sales by an Indiana seller of Indiana goods to an out-of-state buyer who comes to Indiana, takes delivery there and transports the goods to another State. The *Wood Preserving Corp.* case indicates that it is immaterial to the present issue that the goods are to be transported out of Indiana immediately on delivery. Moreover, both the agreement to sell and the delivery took place in Indiana. Those events would be adequate to sustain a sales tax by Indiana. In *McGoldrick* v. *Berwind-White Co.,* 309 U. S. 33, we had before us a question of the constitutionality of a New York City sales tax as applied to purchases from out-of-state sellers. The tax was "laid upon the buyer, for consumption, of tangible personal property, and measured by the sales price." *Id.,* p. 43. And it was "conditioned upon events occurring" within New York, i. e., the "transfer of title or possession of the purchased property." *Id.,* pp. 43–44. Under the principle of that case, a buyer who accepted delivery in New York would not be exempt from the sales tax because he came from without the State and intended to return to

his home with the goods. The present tax, to be sure, is on the seller. But in each a local transaction is made the taxable event and that event is separate and distinct from the transportation or intercourse which is interstate commerce. In neither does the tax aim at or discriminate against interstate commerce. The operation of the tax and its effect on interstate commerce seem no more severe in the one case than in the other. Indeed, if we are to remain concerned with the practical operation of these state taxes rather than with their descriptive labels (*Nelson* v. *Sears, Roebuck & Co.*, 312 U. S. 359, 363), we must acknowledge that the sales tax sustained in the *Berwind-White* case "was, in form, imposed upon the gross receipts from an interstate sale." Lockhart, Gross Receipts Taxes on Interstate Transportation and Communication, 57 Harv. L. Rev. 40, 87. But that case did no more than to hold that those in interstate trade could not complain if interstate commerce carried its share of the burdens of local government which helped sustain it. And there was no showing that more than that was being exacted.

The sales in Class E embrace those by an Indiana seller to an Indiana buyer where the goods are shipped from points outside the State to the buyer. The validity of the tax on receipts from such sales would seem to follow *a fortiori* from our recent affirmance *per curiam* (318 U. S. 740) of *Department of Treasury* v. *Allied Mills*, 220 Ind. 340, 42 N. E. 2d 34. In that case an Indiana corporation had one factory in Indiana and two in Illinois. Each factory was given a specified part of Indiana to service—a method of distribution adopted to take advantage of favorable freight rates, not to evade taxes. The issue in the case was whether the Indiana gross income tax could be applied to receipts from sales to resident customers in Indiana to whom deliveries were made from the plants in Illinois pursuant to orders taken in Indiana and accepted in Illinois. The Indiana Supreme Court sustained the

imposition of the tax. We affirmed that judgment on the authority of *Felt & Tarrant Co.* v. *Gallagher,* 306 U. S. 62, and *McGoldrick* v. *Felt & Tarrant Co.,* 309 U. S. 70.

In the latter cases the Felt & Tarrant Co. was an Illinois seller who had agents soliciting orders in California and New York. All orders were forwarded to the Illinois office for approval. If accepted, the orders were filled by shipping the products to the local agent who delivered to the purchaser. At times shipments would be made direct to the buyers. Remittances were made by the customers direct to the Illinois office. In the first of these cases the Court sustained the collection from the seller of the California use tax. In the second we upheld on the authority of *McGoldrick* v. *Berwind-White Co., supra,* the imposition by New York City of its sales tax on those purchases.

We do not see how these cases can stand if the Class E sales are to be exempt on constitutional grounds from the present tax. Indeed the transactions in Class E have fewer interstate attributes than those in the *Felt & Tarrant Co.* cases since the agreements to sell were made in Indiana, both buyer and seller were in Indiana, and payments were made in Indiana. It is of course true that in the *Felt & Tarrant Co.* cases taxes of different names were involved. But we are dealing in this field with matters of substance, not with dialectics. *Nelson* v. *Sears, Roebuck & Co., supra.* In this case as in the foregoing sales tax cases the taxable transaction is at the final stage of an interstate movement and the tax is on the gross receipts from an interstate transaction. In form the use tax is different since it is levied on intrastate use after the completion of an interstate sale. But we recognized in the *Berwind-White* case that in that setting the New York sales tax and the California use tax had "no different effect upon interstate commerce." 309 U. S. p. 49. And

see *Nelson* v. *Sears, Roebuck & Co., supra.* The same is true of this Indiana tax as applied to the Class E sales. There is the same practical equivalence whether the tax is on the selling or the buying phase of the transaction. See Powell, New Light On Gross Receipts Taxes, 53 Harv. L. Rev. 909, 929. Each is in substance an imposition of a tax on the transfer of property. In light of our recent decisions it could hardly be held that Indiana lacked constitutional authority to impose a sales tax or a use tax on these transactions. But if that is true, a constitutional difference is not apparent when a "gross receipts" tax is utilized instead.

Here as in case of the other classes of sales there is no discrimination against interstate commerce. The consummation of the transaction was an event within the borders of Indiana which gave it authority to levy the tax on the gross receipts from the sales. And that event was distinct from the interstate movement of the goods and took place after the interstate journey ended.

Much is said, however, of double taxation, particularly with reference to the Class D sales. It is argued that appellants will in all probability be subjected to the Illinois Retailers' Occupation Tax for some of those sales, since that tax is said to be exacted from those doing a retail business in Illinois even though orders for the sales are accepted outside of Illinois and the property is transferred in another State.[5] But it will be time to cross that bridge when we come to it. For example, in the *Wood Preserving Corp.* case the State to which the purchaser took the ties might also have sought to tax the transaction by levying a use tax. But we did not withhold the hand of Indiana's tax collector on that account. Nor is the problem like that of an attempted tax on the gross proceeds of an interstate sale by both the State of the buyer and the State of the seller. Cf. *Adams Mfg. Co.* v. *Storen, supra.*

---

[5] See L. Ill. 1943, p. 1121, § 1 b, amending L. Ill. 1933, p. 924.

We only hold that where a State seeks to tax gross receipts from interstate transactions consummated within its borders its power to do so cannot be withheld on constitutional grounds where it treats wholly local transactions the same way. Such "local activities or privileges" (*McGoldrick* v. *Berwind-White Co., supra*, p. 58) are as adequate to support this tax as they would be to support a sales tax. To deny Indiana this power would be to make local industry suffer a competitive disadvantage.

*Affirmed.*

MR. JUSTICE JACKSON dissents.

MR. JUSTICE ROBERTS took no part in the consideration or decision of this case.

MR. JUSTICE RUTLEDGE, concurring in No. 355 (this case) and No. 441, *ante,* p. 335, and dissenting in No. 311, *ante,* p. 327:

These three cases present in various applications the question of the power of a state to tax transactions having a close connection with interstate commerce.

In No. 311, *McLeod* v. *J. E. Dilworth Co., ante,* p. 327, Arkansas has construed its tax to be a sales tax, but has held this cannot be applied where a Tennessee corporation, having its home office and place of business in Memphis, solicits orders in Arkansas, by mail, telephone or sending solicitors regularly from Tennessee, accepts the orders in Memphis, and delivers the goods there to the carrier for shipment to the purchaser in Arkansas. This Court holds the tax invalid, because "the sale—the transfer of ownership—was made in Tennessee. For Arkansas to impose a tax on such transaction would be to project its powers beyond its boundaries and to tax an interstate transaction." Though an Arkansas "use tax" might be sustained in the same situation, "we are not dealing with matters of nomenclature even though they be matters of nicety." And the case is thought to be different from the

*Berwind-White* case, 309 U. S. 33, where New York City levied the tax, because, in the Arkansas court's language, "the corporation maintained its sales office in New York City, took its contracts in New York City and made actual delivery in New York City. . . ."

On the other hand, in No. 441, *General Trading Co.* v. *State Tax Commission, ante,* p. 335, Iowa applies its "use tax" to a transaction in which a Minnesota corporation ships goods from Minnesota, its only place of business, to Iowa purchasers on orders solicited in Iowa by salesmen sent there regularly from Minnesota for that purpose, the orders being accepted in Minnesota. This tax the Court sustains. While "no State can tax the privilege of doing interstate business, . . . the mere fact that property is used for interstate commerce or has come into an owner's possession as a result of interstate commerce does not diminish the protection which it may draw from a State to the upkeep of which it may be asked to bear its fair share. But a fair share precludes legislation obviously hostile or practically discriminatory toward interstate commerce. . . . None of these infirmities affects the tax in this case. . . ." And the foreign or nonresident seller who does no more than solicit orders in Iowa, as the Tennessee seller does in Arkansas, may be made the state's tax collector.

In No. 355, *International Harvester Co.* v. *Dept. of Treasury, ante,* p. 340, the state applies its gross income tax, among other situations, to one (Class D) where a foreign corporation authorized to do and doing business in Indiana sells and delivers its product in Indiana to out-of-state customers who come into the state for the transaction. The Court sustains the tax as applied.

## I.

For constitutional purposes, I see no difference but one of words and possibly one of the scope of coverage between the Arkansas tax in No. 311 and the Iowa tax in No. 441.

This is true whether the issue is one of due process or one of undue burden on interstate commerce. Each tax is imposed by the consuming state. On the records here, each has a due process connection with the transaction in that fact and in the regular, continuous solicitation there. Neither lays a greater burden on the interstate business involved than it does on wholly intrastate business of the same sort. Neither segregates the interstate transaction for separate or special treatment. In each instance therefore interstate and intrastate business reach these markets on identical terms, so far as the effects of the state taxes are concerned.

And in my opinion they do so under identical material circumstances. In both cases the sellers are "nonresidents" of the taxing state, foreign corporations. Neither seller maintains an office or a place of business there. Each has these facilities solely in the state of origin. In both cases the orders are taken by solicitors sent regularly to the taxing state for that purpose. In both the orders are accepted at the home office in the state of origin. And in both the goods are shipped by delivery to the carrier or the post in the state of origin for carriage across the state line and delivery by it to the purchaser in his taxing state.

In the face of such identities in connections and effects, it is hard to see how one tax can be upheld and the other voided. Surely the state's power to tax is not to turn on the technical legal effect, relevant for other purposes but not for this, that "title passes" on delivery to the carrier in Memphis and may or may not so pass, so far as the record shows, when the Minnesota shipment is made to Iowa. In the absence of other and more substantial difference, that irrelevant technical consideration should not control. However it may be determined for locating the incidence of loss in transit or other questions arising among buyer, seller and carrier, for purposes of taxation that

factor alone is a will-o'-the-wisp, insufficient to crux a due process connection from selling to consuming state and incapable of increasing or reducing any burden the tax may place upon the interstate transaction.

The only other difference is in the terms used by Iowa and Arkansas, respectively, to describe their taxes. For reasons of her own Arkansas describes her tax as a "sales tax." Iowa calls hers a "use tax." This court now is committed to the validity of "use" taxes: *Henneford* v. *Silas Mason Co.*, 300 U. S. 577; *Felt & Tarrant Manufacturing Co.* v. *Gallagher*, 306 U. S. 62; *Nelson* v. *Sears, Roebuck & Co.*, 312 U. S. 359; *Nelson* v. *Montgomery Ward & Co.*, 312 U. S. 373. Similarly, "sales taxes" on "interstate sales" have been sustained. In *McGoldrick* v. *Berwind-White Coal Mining Co.*, 309 U. S. 33, such a tax applied by the state of the market was upheld. Compare *Banker Brothers Co.* v. *Pennsylvania*, 222 U. S. 210; *Wiloil Corp.* v. *Pennsylvania*, 294 U. S. 169. Other things being the same, constitutionality should not turn on whether one name or the other is applied by the state. *Wisconsin* v. *J. C. Penney Co.*, 311 U. S. 435. The difference may be important for the scope of the statute's application, that is, whether it is intended to apply to some transactions but not to others that are within reach of the state's taxing power. It hardly can determine whether the power exists.

## II.

The Court's different treatment of the two taxes does not result from any substantial difference in the facts under which they are levied or the effects they may have on interstate trade. It arises rather from applying different constitutional provisions to the substantially identical taxes, in the one case to invalidate that of Arkansas, in the other to sustain that of Iowa. Due process destroys the former. Absence of undue burden upon interstate commerce sustains the latter.

It would seem obvious that neither tax of its own force can impose a greater burden upon the interstate transaction to which it applies than it places upon the wholly local trade of the same character with which that transaction competes. By paying the Arkansas tax the Tennessee seller will pay no more than an Arkansas seller of the same goods to the same Arkansas buyer; and the latter will pay no more to the Tennessee seller than to an Arkansas vendor, on account of the tax, in absorbing its burden. The same thing is true of the Iowa tax in its incidence upon the sale by the Minnesota vendor. The cases are not different in the burden the two taxes place upon the interstate transactions. Nor in my opinion are they different in the existence of due process to sustain the taxes.

"Due process" and "commerce clause" conceptions are not always sharply separable in dealing with these problems. Cf. *e. g., Western Union Telegraph Co.* v. *Kansas,* 216 U. S. 1. To some extent they overlap. If there is a want of due process to sustain the tax, by that fact alone any burden the tax imposes on the commerce among the states becomes "undue." But, though overlapping, the two conceptions are not identical. There may be more than sufficient factual connections, with economic and legal effects, between the transaction and the taxing state to sustain the tax as against due process objections. Yet it may fall because of its burdening effect upon the commerce. And, although the two notions cannot always be separated, clarity of consideration and of decision would be promoted if the two issues are approached, where they are presented, at least tentatively as if they were separate and distinct, not intermingled ones.

Thus, in the case from Arkansas no more than in that from Iowa should there be difficulty in finding due process connections with the taxing state sufficient to sustain the tax. As in the Iowa case, the goods are sold and shipped to Arkansas buyers. Arkansas is the consuming state,

the market these goods seek and find. They find it by virtue of a continuous course of solicitation there by the Tennessee seller. The old notion that "mere solicitation" is not "doing business" when it is regular, continuous and persistent is fast losing its force. In the *General Trading* case it loses force altogether, for the Iowa statute defines this process in terms as "a retailer maintaining a place of business in this state."[1] The Iowa Supreme Court sustains the definition and this Court gives effect to its decision in upholding the tax. Fiction the definition may be; but it is fiction with substance because, for every relevant constitutional consideration affecting taxation of transactions, regular, continuous, persistent solicitation has the same economic, and should have the same legal, consequences as does maintaining an office for soliciting and even contracting purposes or maintaining a place of business, where the goods actually are shipped into the state from without for delivery to the particular buyer. There is no difference between the Iowa and the Arkansas situations in this respect. Both involve continuous, regular, and not intermittent or casual courses of solicitation. Both involve the shipment of goods from without to a buyer within the state. Both involve taxation by the state of the market. And if these substantial connections are sufficient to underpin the tax with due process in the one case, they are also in the other.

That is true, if labels are not to control, unless something which happens or may happen outside the taxing state operates in the one case to defeat the jurisdiction, but does not defeat it in the other.

As I read the Court's opinion, though it does not explicitly so state, the Arkansas tax falls because Tennessee could tax the transaction and, as between the two states, has exclusive power to do so. This is because "the sale—the transfer of ownership—was made in Tennessee."

---

[1] Cf. *Frene* v. *Louisville Cement Co.*, 134 F. 2d 511 (App. D. C.).

Arkansas' relation to the transaction is constitutionally different from that of New York in the *Berwind-White* case, though both are the state of the market, because the Berwind-White Company "maintained its sales office in New York City, took its contracts in New York City and made actual delivery in New York City." This "constituted a sale in New York and accordingly we sustained a retail sales tax by New York." So here the company's "offices are maintained in Tennessee, the sale is made in Tennessee, and the delivery is consummated either in Tennessee or in interstate commerce. . . ." The inevitable conclusion, it seems to me, is that the Court is deciding not only that Arkansas cannot tax the transaction, but that Tennessee can tax it and is the only state which can do so. To put the matter shortly, Arkansas cannot levy the tax because Tennessee can levy it. Hence "for Arkansas to impose a tax on such transaction would be to project its powers beyond its boundaries and to tax an interstate transaction."

This statement of the matter appears to be a composite of due process and commerce clause ideas. If so, it is hard to see why the same considerations do not nullify Iowa's power to levy her tax in the identical circumstances and vest exclusive jurisdiction in Minnesota to tax these transactions. For in the Iowa case the selling corporation maintains its office and place of business in Minnesota, accepts the orders there, and the delivery, which is to carrier or post, is consummated, so far as the record shows, exactly in the manner it is made in the Tennessee-Arkansas transaction. If these facts nullify Arkansas' power to tax the transaction by vesting exclusive jurisdiction in Tennessee, it would seem *a fortiori* they would nullify Iowa's power and give Minnesota exclusive jurisdiction to tax the transactions there involved. Unless the sheer difference in the terms "sale" and "use," and whatever difference these might make as a matter of legislative selec-

tion of the transactions which are to bear the tax, are to control upon the existence of the power to tax, the result should be the same in both cases.

Merely as a matter of due process, it is hard to see why any of the four states cannot tax the transactions these cases involve. Each has substantial relations and connections with the transaction, the state of market not less in either case than the state of origin. It "sounds better" for the state of origin to call its tax a "sales tax" and the state of market to name its tax a "use tax." But in the *Berwind-White* case the latter's "sales tax" was sustained, where it is true more of the incidents of sale conjoined with the location of the place of market than do in either No. 311 or No. 441. If this is the distinguishing factor, as it might be for selecting one of the two connected jurisdictions for exclusive taxing power, it is not one which applies to either of these transactions. The identity is not between the *Dilworth* case and *Berwind-White*. It is rather between *Dilworth* and *General Trading*, with *Berwind-White* differing from both. And, so far as due process alone is concerned, it should make no difference whether the tax in the one case is laid by Arkansas or Tennessee and in the other by Iowa or Minnesota. Each state has a sufficiently substantial and close connection with the transaction, whether by virtue of tax benefits conferred in general police protection and otherwise or on account of ideas of territorial sovereignty concerning occurrence of "taxable incidents" within its borders, to furnish the due process foundation necessary to sustain the exercise of its taxing power. Whether it exerts this by selecting for "impingement" of the tax some feature or incident of the transaction which it denominates "sale" or "use" is both illusory and unimportant in any bearing upon its constitutional authority as a matter of due process. If this has any substantive effect, it is merely one of legislative intent in selecting the transactions to bear the tax and thus

fixing the scope of its coverage, not one of constitutional power. "Use" may cover more transactions with which a state has due process connections than "sale." But whenever sale occurs and is taxed the tax bears equally, in final incidence of burden, upon the use which follows immediately upon it.

The great difficulty in allocating taxing power as a matter of due process between the state of origin and the state of market arises from the fact that each state, considered without reference to the other, always has a sufficiently substantial relation in fact and in tax benefit conferred to the interstate transaction to sustain an exertion of its taxing power, a fact not always recognized. And from this failure, as well as from the terms in which statutes not directed specifically to reaching these transactions are cast, comes the search for some "taxable incident taking place within the state's boundaries" as a hook for hanging constitutionality under due process ideas. "Taxable incident" there must be. But to take what is in essence and totality an interstate transaction between a state of origin and one of market and hang the taxing power of either state upon some segmented incident of the whole and declare that this does or does not "tax an interstate transaction" is to do two things. It is first to ignore that any tax hung on such an incident is levied on an interstate transaction. For the part cannot be separated from the whole. It is also to ignore the fact that each state, whether of origin or of market, has by that one fact alone a relation to the whole transaction so substantial as to nullify any due process prohibition. Whether the tax is levied on the "sale" or on the "use," by the one state or by the other, it is in fact and effect a tax levied on an interstate transaction. Nothing in due process requirements prohibits either state to levy either sort of tax on such transactions. That Tennessee therefore may tax this transaction by a sales tax does not, in any proper conception of due process, deprive Arkansas of the same power.

## III.

When, however, the issue is turned from due process to the prohibitive effect of the commerce clause, more substantial considerations arise from the fact that both the state of origin and that of market exert or may exert their taxing powers upon the interstate transaction. The long history of this problem boils down in general statement to the formula that the states, by virtue of the force of the commerce clause, may not unduly burden interstate commerce. This resolves itself into various corollary formulations. One is that a state may not single out interstate commerce for special tax burden. *McGoldrick* v. *Berwind-White Coal Mining Co.*, 309 U. S. 33, 55–56. Nor may it discriminate against interstate commerce and in favor of its local trade. *Welton* v. *Missouri*, 91 U. S. at 275; *Guy* v. *Baltimore*, 100 U. S. 434; *Voight* v. *Wright*, 141 U. S. 62. Again, the state may not impose cumulative burdens upon interstate trade or commerce. *Gwin, White & Prince* v. *Henneford*, 305 U. S. 434; *Adams Mfg. Co.* v. *Storen*, 304 U. S. 307. Thus, the state may not impose certain taxes on interstate commerce, its incidents or instrumentalities, which are no more in amount or burden than it places on its local business, not because this of itself is discriminatory, cumulative or special or would violate due process, but because other states also may have the right constitutionally, apart from the commerce clause, to tax the same thing and either the actuality or the risk of their doing so makes the total burden cumulative, discriminatory or special.[2]

In these interstate transactions cases involving taxation by the state of origin or that of market, the trouble arises, under the commerce clause, not from any danger that either tax taken alone, whether characterized as "sales" or

---

[2] Cf. the opinion of the Chief Justice in *Northwest Airlines* v. *Minnesota, ante,* p. 308.

"use" tax, will put interstate trade at a disadvantage which will burden unduly its competition with the local trade. So long as only one tax is applied and at the same rate as to wholly local transactions, no unduly discriminatory clog actually attaches to the interstate transaction of business.

The real danger arises most obviously when both states levy the tax. Thus, if in the instant cases it were shown that, on the one hand, Arkansas and Iowa actually were applying a "use" tax and Tennessee and Minnesota a "sales" tax, so that in each case the interstate transaction were taxed at both ends, the heavier cumulative burden thus borne by the interstate business in comparison with the local trade in either state would be obvious. If in each case the state of origin were shown to impose a sales tax of three per cent and the state of market a use tax of the same amount, interstate transactions between the two obviously would bear double the local tax burden borne by local trade in each state. This is a difference of substance, not merely one of names, relevant to the problem created by the commerce clause, though not to that of "jurisdiction" under due process conceptions. And the difference would be no less substantial if the taxes levied by both the state of origin and that of market were called "sales" taxes or if, indeed, both were called "use" taxes.

The Iowa tax in No. 441 avoids this problem by allowing credit for any sales tax shown to be levied upon the transaction whether in Iowa or elsewhere. Clearly therefore that tax cannot in fact put the interstate transaction at a tax disadvantage with local trade done in Iowa or elsewhere.[3]

However, the Arkansas tax in No. 311 provides for no such credit. But in that case there is no showing that Tennessee actually imposes any tax upon the transaction.

---

[3] Cf. text *infra* at note 4 *et seq.*

If there is a burden or clog on commerce, therefore, it arises from the fact that Tennessee has power constitutionally to impose a tax, may exercise it, and when this occurs the cumulative effect of both taxes will be discriminatorily burdensome, though neither tax singles out the transaction or bears upon it more heavily than upon the local trade to which it applies. In short, the risk of multiple taxation creates the unconstitutional burden which actual taxation by both states would impose in fact.

In my opinion this is the real question and the only one presented in No. 311. And in my judgment it is determined the wrong way, not on commerce clause grounds but upon an unsustainable application of the due process prohibition.

Where the cumulative effect of two taxes, by whatever name called, one imposed by the state of origin, the other by the state of market, actually bears in practical effect upon such an interstate transaction, there is no escape under the doctrine of undue burden from one of two possible alternatives. Either one tax must fall or, what is the same thing, be required to give way to the other by allowing credit as the Iowa tax does, or there must be apportionment. Either solution presents an awkward alternative. But one or the other must be accepted unless that doctrine is to be discarded and one of two extreme positions taken, namely, that neither state can tax the interstate transaction or that both may do so until Congress intervenes to give its solution for the problem. It is too late to accept the former extreme, too early even if it were clearly desirable or permissible to follow the latter.

As between apportionment and requiring one tax to fall or allow credit, the latter perhaps would be the preferable solution. And in my opinion it is the one which the Court in effect, though not in specific statement, adopts.

That the decision is cast more largely in terms of due process than in those of the commerce clause does not nullify that effect.

If in this case it were necessary to choose between the state of origin and that of market for the exercise of exclusive power to tax, or for requiring allowance of credit in order to avoid the cumulative burden, in my opinion the choice should lie in favor of the state of market rather than the state of origin.[4]  The former is the state where the goods must come in competition with those sold locally.  It is the one where the burden of the tax necessarily will fall equally on both classes of trade.  To choose the tax of the state of origin presents at least some possibilities that the burden it imposes on its local trade, with which the interstate traffic does not compete, at any rate directly, will be heavier than that placed by the consuming state on its local business of the same character.  If therefore choice has to be made, whether as a matter of exclusive power to tax or as one of allowing credit, it should be in favor of the state of market or consumption as the one most certain to place the same tax load on both the interstate and competing local business.  Hence, if the risk of taxation by both states may be said to have the same constitutional consequences, under the commerce clause, as taxation in actuality by both, the Arkansas tax, rather than the power of Tennessee to tax, should stand.

It may be that the mere risk of double taxation would not have the same consequences, given always of course a sufficient due process connection with the taxing states, that actual double taxation has, or may have, for applica-

---

[4] Cf. Powell, New Light on Gross Receipts Taxes (1940) 53 Harv. L. Rev. 909; Lockhart, The Sales Tax in Interstate Commerce (1939) 52 Harv. L. Rev. 617; compare *Gwin, White & Prince* v. *Henneford,* 305 U. S. 434; *Adams Mfg. Co.* v. *Storen,* 304 U. S. 307.

tion of the commerce clause prohibition. Risk of course is not irrelevant to burden or to the clogging effect the rule against undue burden is intended to prevent. But in these situations it may be doubted, on entirely practical grounds, that the mere risk Tennessee may apply its taxing power to these transactions will have any substantial effect in restraining the commerce such as the actual application of that power would have. In any event, whether or not the choice must be made now or, as I think, has been made, it should go in favor of Arkansas, not Tennessee.

For all practical purposes Indiana's gross income tax in No. 355 may be regarded as either a sales tax or a use tax laid in the state of market, comparable in all respects (except in words) to the Arkansas tax laid in No. 311 and to the Iowa tax imposed in No. 441, except that here the seller as well as the buyer does business and concludes the transaction in Indiana, the state of the market. This is clearly true of Classes C and E. It is true also of Class D, in my opinion, although the buyer there resided in Illinois but went to Indiana to enter into the transaction and take delivery of the goods. That he at once removed them, on completion of the transaction there, to Illinois, intended to do this from the beginning and this fact may have been known to the seller, does not take from the transaction its character as one entered into and completed in Indiana. Whether or not Illinois, in these circumstances, could impose a use tax or some other as a property tax is not presented and need not be determined. If the Arkansas and Iowa taxes stand, or either does, *a fortiori* the Indiana tax stands in these applications.

Accordingly, I concur in the decisions in Nos. 441 and 355, but dissent from the decision in No. 311.