## Wieman and Ward Company *v.* Pittsburgh, Appellant.

Argued March 17, 1955. Before STERN, C. J.,
STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and AR-
NOLD, JJ.

*David Stahl*, Assistant City Solicitor, with him *J.
Frank McKenna, Jr.*, City Solicitor, for City of Pitts-
burgh, appellant.

*Oscar G. Peterson*, Assistant Solicitor, with him
*Mortimer B. Lesher*, Solicitor, for School District, ap-
pellant.

*J. Wray Connolly*, with him *William F. Swanson,
Jr.*, and *Moorhead & Knox*, for appellees.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, May
4, 1955:

The question is whether certain sales made by The
Wieman and Ward Company, a Pennsylvania corpora-
tion engaged in Pittsburgh in the business of whole-
sale dealer in coal, coke and pig iron, are transactions

the gross receipts from which are properly includable in computing the mercantile license taxes of the City of Pittsburgh and the School District of Pittsburgh, or whether they are exempt therefrom because they involve interstate commerce.

The mercantile license tax of the City of Pittsburgh is imposed under an Ordinance which is authorized by the Act of June 25, 1947, P. L. 1145, as amended, and which provides, in the case of a wholesale dealer, for a tax at the rate of 1 mill on each dollar of the volume of his annual gross business. The mercantile license tax of the School District is imposed by the Act of June 20, 1947, P. L. 745, as amended, which provides, in the case of a wholesale dealer, for a tax at the rate of ½ mill on each dollar of the volume of his annual gross business.

The Wieman and Ward Company filed with the City and the School District combination mercantile tax returns for the years 1948, 1949, 1950, and 1951, based on its annual gross intrastate business, and it duly paid the taxes thereon. The City and the School District, however, assessed the Company additional taxes based upon sales in which certain interstate features were involved. The Company filed bills of complaint that the additional assessments be declared null and void. The court below sustained its contentions, whereupon the City and the School District took the present appeals.

The transactions on which the controversy is based are classified by the parties in six categories for convenience of treatment:[1]

---

[1] There is a seventh category representing sales of Pennsylvania mined coal, mostly to the Pennsylvania Railroad at their scales in Pennsylvania, for shipment over their system to points when and where needed. Appellee admits that these transactions are taxable and therefore they are not in dispute.

Class A transactions consist of sales of coal to Pennsylvania buyers. The coal is purchased by The Wieman and Ward Company from out-of-State mines specified by the buyer and delivered directly, at the buyer's direction, to the buyer's customers out of the State. A typical example is a sale of certain specified coal to the H. C. Frick Coke Company of Pittsburgh, the coal being procured from a mine in Kentucky and shipped directly to an Ohio customer of the Frick Company.

Class B transactions consist of sales of coal to Pennsylvania buyers. The coal is purchased by The Wieman and Ward Company from mines in Pennsylvania specified by the buyer and delivered directly, at the buyer's direction, to the buyer's customers out of the State. A typical example is a sale of certain specified coal to the Cortright Coal Company in Pittsburgh, the coal being procured from a mine in Pennsylvania and shipped to a New Jersey customer of the Cortright Company. A similar transaction was described as a sale to the Pennsylvania Coal & Coke Corporation in Philadelphia of a specified coal mined in Pennsylvania and shipped to the latter's customer in Maryland.

Class C transactions consist of sales to the Baltimore and Ohio Railroad Company, the principal office of which is located in Baltimore, of a specified coal procured from out-of-State mines and delivered to the Railroad Company at their scales in Pennsylvania.

Class D transactions consist of sales to Pennsylvania buyers of coal specified by the buyer, procured from out-of-State mines, and delivered to the buyer or the buyer's customers in Pennsylvania. A typical example is a sale to Jones and Laughlin Steel Corporation of Pittsburgh of certain specified coal procured from a mine in West Virginia, and shipped to the purchaser's blast furnace at Aliquippa, Pennsylvania.

Class E transactions consist of sales to the Weirton Steel Company of Weirton, West Virginia, of certain specified coal mined in West Virginia and delivered by barges to a point on the Monongahela River within Pennsylvania designated by the buyer; at that point the buyer loads additional coal from its own mine on the barges which then continue on to Weirton.

Class F transactions consist of sales, also to the Weirton Steel Company, of coal mined in Pennsylvania and delivered by truck to a point on the Monongahela River within Pennsylvania designated by the buyer; there it is loaded by the buyer, together with its own coal, on barges which take it to Weirton.

The mercantile license taxes here involved are taxes on the privilege or business of selling merchandise, in the one case in the City of Pittsburgh and in the other in the School District of Pittsburgh. The mere fact that transactions may to some extent involve interstate commerce does not necessarily exempt them from local taxation. It was said in *McGoldrick, Comptroller of the City of New York v. Berwind-White Coal Mining Co.,* 309 U. S. 33, 46, 47: "Not all state taxation is to be condemned because, in some manner, it has an effect upon commerce between the states, and there are many forms of tax whose burdens, when distributed through the play of economic forces, affect interstate commerce, which nevertheless fall short of the regulation of the commerce which the Constitution leaves to Congress." And in *International Harvester Co. v. Department of Treasury,* 322 U. S. 340, 344, it was said: ". . . neither the Commerce Clause nor the Fourteenth Amendment prevents the imposition of the [State] tax on receipts from an intrastate transaction even though the total activities from which the local transaction derives may have incidental interstate attributes."

Some of the circumstances under which local taxation is not unconstitutional even where there is a transportation of goods across state lines are discussed at length in *Keystone Metal Co. v. Pittsburgh,* 374 Pa. 323, 97 A. 2d 797 (cert. den. 346 U. S. 887, rehearing den. 917). It was there pointed out (p. 327, A. p. 799) that the Supreme Court of the United States has held in many cases there cited,[2] that, although a transaction viewed as a whole may be one in interstate commerce, there may be certain "intrastate events" or "local activities" in connection therewith that permit the imposition of a State tax. We stated that "The solution of the question whether a State tax falls within this latter category depends entirely on the particular facts in each instance," and (p. 328, A. p. 799) it "is not determined by the broad concept of what constitutes interstate commerce when problems of State *regulation* are concerned; it depends rather on whether there are sufficient local incidents to validate the tax, even though the total activities from which the transaction arises may have incidental interstate attributes." And we held in that case that sales of copper scrap made by a Pittsburgh seller to Pittsburgh buyers were properly included as gross receipts under the same mercantile license taxes as those here involved, even though the material itself never came into Pennsylvania but was delivered directly from out-of-State suppliers to parties outside the State not affiliated with either the seller or the buyers.

We turn, then, to the Class A transactions. In these the coal is sold by the appellee company, a Pittsburgh

---

[2] *Western Live Stock v. Bureau of Revenue,* 303 U. S. 250; *Southern Pacific Co. v. Gallagher,* 306 U. S. 167, 176; *McGoldrick v. Berwind-White Coal Mining Co.,* 309 U. S. 33, 58; *International Harvester Co. v. Department of Treasury,* 322 U. S. 340; *Norton Co. v. Department of Revenue of Illinois,* 340 U. S. 534.

dealer, to Pittsburgh buyers; the transaction of sale is consummated in Pennsylvania and clearly forms part of the total business activities of the company on which the mercantile license tax is imposed. It is true that the buyer in such transaction specifies a kind of coal which is obtainable only from an out-of-State mine and gives shipping instructions for delivery to the buyer's out-of-State customer, but in the *Keystone Metal Company* case it was held that the fact that the sale was made in Pennsylvania by a Pennsylvania dealer to a Pennsylvania buyer was an "intrastate event" or "local activity" sufficient to justify the right of the City and the School District of Pittsburgh to include such a transaction within the measure of the mercantile license taxes. It is true also, of course, that there is necessarily involved a physical transportation of goods from one State to another, thereby constituting interstate commerce, but the mere fact that such transportation is induced or occasioned by a local business transaction does not render the transaction exempt from local taxation: *Western Live Stock v. Bureau of Revenue,* 303 U. S. 250, 253.

Appellee seeks to distinguish these Class A transactions from the ruling in the *Keystone Metal Company* case by pointing out that here the buyer's specification was for coal to be obtained from an out-of-State mine, whereas in the *Keystone Metal Company* case the scrap copper might possibly have been obtained in Pennsylvania although in the particular instance it had to be procured elsewhere. But this difference would scarcely seem to be of significance from a legal standpoint because in both cases a physical transportation of the coal or the copper takes place across State lines and therefore interstate commerce is as much involved in the one instance as in the other. Another attempted distinction is that in the *Keystone Metal*

*Company* case the copper was sent to a consignee in New Jersey for processing whereas in the present case the coal is delivered to an out-of-State buyer for consumption, but this fact likewise furnishes no basis for a legal differentiation because it is obvious that the mere purpose or object of the consignee in receiving the shipment has no bearing whatever on the interstate nature of the transaction. We conclude, therefore, that the transactions in Class A are includable in the volume of appellee's gross receipts in computing these mercantile license taxes.

The same result necessarily follows in regard to the *transactions* in Classes B and D. In Class B as in Class A the sales of coal are made by a Pennsylvania dealer to Pennsylvania buyers, the only difference being that the buyer in this instance specifies a Pennsylvania instead of an out-of-State mine, a fact which, if anything, makes the transaction even more of a "local event." In Class D the sales likewise are made by a Pennsylvania dealer to Pennsylvania buyers; although the coal is procured from out-of-State mines specified by the buyer it is delivered to the buyer or his customers in Pennsylvania. There is here, therefore, a sale in Pennsylvania and a delivery in Pennsylvania, and consequently an obviously taxable transaction.

As to Class C transactions, there is some apparent controversy in regard to the State in which the sale of the coal is effected. All appellee's salesmen, with the exception of three not here involved, are located in the company's Pittsburgh office, and, while they doubtless contact buyers outside the State in order to negotiate sales, there is nothing in the record to indicate but that all orders thus obtained were subject to acceptance, and were accepted, and the sales thereby consummated, at appellee's home office. The coal in these

transactions is delivered to the buyer in Pennsylvania, and such a delivery has been held in certain cases to constitute in itself an adequate taxable event: *Department of Treasury of Indiana v. Wood Preserving Corporation*, 313 U. S. 62, 67, 68; *International Harvester Co. v. Department of Treasury*, 322 U. S. 340, 345. Even if the orders for the sales were obtained and the contracts executed outside Pennsylvania, this is not controlling in regard to the question of the taxability of the transaction where there is such intrastate delivery: *Western Live Stock v. Bureau of Revenue*, 303 U. S. 250, 253; *Department of Treasury of Indiana v. Wood Preserving Corporation*, 313 U. S. 62; *Department of Treasury of Indiana v. Ingram-Richardson Manufacturing Co. of Indiana*, 313 U. S. 252, 254; *International Harvester Co. v. Department of Treasury*, 322 U. S. 340, 345. We conclude, therefore, that the Class C sales have sufficiently the nature of local transactions to justify the inclusion of the receipts therefrom in the volume of appellee's business activities on the basis of which the City's and School District's mercantile license taxes are computed.

Class E transactions consist of sales to a West Virginia company of coal mined in that same State and shipped on barges on the Monongahela River. The sales are negotiated in West Virginia but the orders are accepted, and therefore the sales contracts made, in Pennsylvania. There is a question concerning these transactions as to the place during the course of the interstate transportation where delivery is made by the appellee to the buyer. It appears that the coal is loaded on the barges in West Virginia which are towed by a boat controlled by appellee to a place on the river called Isabella which is in Pennsylvania and which is designated by the buyer as the point of destination. There the buyer takes over, loads other coal of its own

on the barges, and tows them by its own boat to its plant in West Virginia. It would seem, therefore, that dominion over the shipment is transferred from the appellee to the buyer at Isabella and, that being so, the transaction is one where, in addition to the fact that the final contracts of sale are made in Pennsylvania, delivery is also made within that State. Under such circumstances it is clear that these transactions also are subject to the mercantile license taxes. It is argued by appellee that the only reason for the buyer's accepting delivery at Isabella is that, before that point is reached, the barges cannot be completely loaded because of the shallower draft of the river. But the reason for making the delivery at that point is immaterial; it is the fact of the delivery there that is controlling. Nor does it matter in this connection that appellee knows that interstate transportation of the coal is contemplated and will occur after the barges leave Isabella: *Chassaniol v. City of Greenwood*, 291 U. S. 584; *Department of Treasury of Indiana v. Wood Preserving Corporation*, 313 U. S. 62; *International Harvester Company v. Department of Treasury*, 322 U. S. 340, 345; *Interstate Oil Pipe Line Co. v. Stone*, 337 U. S. 662.

Class F transactions are similar in all respects to those in Class E except that the coal is mined in Pennsylvania and delivered by truck to a point on the Monongahela River within Pennsylvania where it is loaded by the buyer, together with its own coal, on barges which take it to its ultimate destination. Here the fact of intrastate delivery is even more clear than in the preceding class, and accordingly the transactions are similarly taxable.

The question has been raised whether the so-called multiple burden test discussed in *Western Live Stock v. Bureau of Revenue*, 303 U. S. 250, has been discarded

or modified by decisions of the United States Supreme Court since the original enunciation of that principle. That subject was discussed at some length in the *Key stone Metal Company* case and requires no repetition here. It is clear that even if a tax of some kind could be imposed by the State of the supplier,—the State where the coal is mined and is purchased by the appellee,—no State other than Pennsylvania could impose a tax on appellee's sale of the coal, and it is *that* transaction, not the previous *purchase* transaction, which enters into the volume of its business for the privilege of conducting which these mercantile license taxes are imposed. Nor would any property or use tax after the coal has entered the State of delivery constitute a "multiple burden" tax on appellee's sale of the coal: *Wiloil Corporation v. Pennsylvania,* 294 U. S. 169; *McGoldrick, Comptroller of the City of New York v. Berwind-White Coal Mining Co.,* 309 U. S. 33. Therefore, even if the multiple burden test were to be applied, it would support the validity of these taxes: *Keystone Metal Company v. Pittsburgh,* 374 Pa. 323, 331, 332, 97 A. 2d 797, 801.

To summarize, therefore, we are of opinion that even though physical transportation of the coal is made in each of the classes in question across State lines and therefore involves the element of interstate commerce, there are, in each of the classes, sufficient local features or events to justify the inclusion by the City and the School District of Pittsburgh of the gross receipts from such transactions in the measure of appellee's business activities for the privilege of conducting which the mercantile license taxes are imposed.

The orders of the court below are reversed at appellee's cost.