CLARENCE M. GAY, as Comptroller of the State of Florida, v. UNITED GAS PIPE LINE COMPANY.

32 So. (2nd) 600                              June Term, 1947
November 14, 1947                                    En Banc

*J. Tom Watson,* Attorney General, *Sumter Leitner* and *T. Paine Kelly,* Assistant Attorneys General, for appellant.

*Yonge, Beggs & Lane* and *James Messer, Jr.,* for appellee.

CHAPMAN, J.:

The record in this case discloses that the United Gas Pipe Line Company, appellee, prior to October, 1942, purchased and transported natural gas through its distribution system for resale to industrial consumers and to an agency of the United States Government for their own uses. Appellee owns its own main pipe lines situated in Texas, Louisiana, Mississippi, and through Alabama into Escambia County, Florida. Pursuant to contracts of sale made in advance of delivery of natural gas, it transported the same through its main pipe lines in continuous and uninterrupted streams from points in Mississippi and Louisiana through the State of Alabama into Escambia County, Florida, where it was delivered to four customers of the appellee in conformity with the terms of contracts of sale

existing between the appellee and its four customers. This point of delivery under each of the four contracts was at measuring stations situated in Escambia County, Florida. There is no reduction of pressure on the pipe lines up to the delivery point at stations, supra, where it is metered and the pressure, for the purpose of metering, is reduced for the first time.

On a former appeal we sustained the legal sufficiency of the bill of complaint in the case at bar against a motion to dismiss. (154 Fla. 235, 17 So. (2nd) 553). After our mandate went down, the appellant (defendant below) filed an answer to the bill of complaint and in so doing denied in a general manner each of the material allegations of paragraphs 2, 3, 4, 5, 6, and 7 of the bill of complaint. Testimony was taken by the respective parties on the issues made by the pleadings and thus the case was presented on final hearing to the Chancellor below, who, after considering the record and hearing counsel for the parties, entered a final decree holding that the equities in the cause were in behalf of the appellee. The legal effect thereof was to hold that the sale and transportation through appellee's pipe lines of the natural gas and the delivery thereof in Escambia County, Florida, to its four customers was interstate commerce. That the several provisions of Chapter 15658, Laws of Florida, Acts of 1931, were inapplicable to interstate commerce, but applied to business "done between points in the State of Florida." Section 2 of Chapter 15658, supra. The Comptroller of the State of Florida appealed.

Counsel for appellant on this appeal pose for adjudication some seven questions based directly or indirectly upon the testimony as a whole, or legal interpretations or controlling conclusions which should be placed on certain contracts or instruments adduced into evidence by the appellee. It is contended by counsel for appellee that since the material allegations of the bill of complaint have each been fully established by competent testimony and are in no manner contradicted by the testimony of the defendant, and since only one witness was offered by the defendant and his testimony is not in conflict with nor contradictory to the testimony of the ap-

pellee, then the proper construction to be placed by the court on the testimony in its entirety requires an affirmance of the decree of the lower court. It is the writer's view that a sufficient answer is given to all questions propounded when the conclusion is reached as to whether the business supra in which appellee was engaged is interstate or intrastate.

Counsel for appellant contend that the contracts between the appellee and (a) Gulf Power Company and (b) Harvester Homes Company, identified as appellee's Exhibits 2 and 17, respectively, are not (1) contracts for the sale of natural gas but an agreement to sell; (2) an agreement to sell and deliver gas for resale; (3) a sale has not been consummated until delivered in Florida; (4) an obligation to pay for the gas does not arise under the contracts until consumed at the burner tips; (5) the gas is not purchased under the two contracts until it has been consumed; (6) no obligation to pay exists until the gas has been consumed; (7) the sale is completed in the State of Florida; (8) the contract of sale is complete when the gas is delivered to customers in Florida; (9) under these and other conditions and circumstances the appellee is obligated to pay a privilege tax under Chapter 15658, supra. International Harvester Co. v. Department of Treasury, 322 U.S. 340, 64 S. Ct. 1019, 88 L. Ed. 1313, is relied upon to sustain this contention.

Likewise appellant's counsel contended that contracts between the appellee and (c) Florida Pulp and Paper Company and (d) the United States Government, identified as appellee's Exhibits 16 and 18, respectively, are contracts (1) for the purchase and sale of gas at retail and to be consumed by the purchaser; (2) the sale is not consummated until placed in consumer's pipes; (3) the sale is not effective until the gas is delivered; (4) the interstate nature of the transaction ends when the gas is delivered in Florida; (5) the contracts provide for the payment of all taxes on the gas by the appellee; (6) other reasons are shown in support of the contention that the transaction is intrastate business and subject to the tax provided for in Chapter 15658, supra. The delivery of the gas from appellee's pipe lines into the measuring stations where it is metered and delivered by the reduction of the

pressure is the breaking of the bulk and becomes a local delivery. The case of Southern Craft Corporation v. Hardin, 205 Ark. 512, 169 S.W. (2nd) 637.

The intrastate character of these transactions, it is contended, is clearly established by the analysis and construction of the contract as above set out and therefore the decree appealed from should be reversed. Careful consideration and study have here been given to these many contentions. The appellee has been delivering natural gas under these contracts, as shown by the record, for many years. The many contentions of counsel apparently overlook the undisputed testimony of the witnesses Abernathy, Randall and Davis, which should be considered in light of their construction and interpretations of the four contracts. The testimony of these witnesses, not discredited in any particular, shows that the gas was transported under pressure through pipe lines of the appellee from Louisiana through Mississippi and Alabama into appellee's stations in Escambia County, Florida. For the purpose of delivery to the purchasers the pressure thereon was reduced for the first time and the gas metered.

The decree of the lower court is affirmed on authority of Illinois Gas Co. v. Public Service Co., 314 U.S. 498, 62 S. Ct. 384, 86 L. ed. 371; State Tax Commission v. Interstate Natural Gas Co., 284 U.S. 41, 52 S. Ct. 62, 76 L. ed. 156; Peoples Gas Co. v. Public Service Commission, 270 U.S. 550, 46 S. Ct., 371, 70 L. Ed. 726; Ozark Pipe Line Corp. v. Monier, 266 U.S. 555, 45 S. Ct. 184, 69 L. ed. 439; Missouri v. Kansas Gas Co., 265 U. S. 298, 44 S. Ct. 544, 68 L ed. 1027. *See Interstate Natural Gas Co.* v. Federal Power Commission, 231 U.S. 682, 67 S. Ct. 1482, 91 L. ed. 1742.

THOMAS, C. J., TERRELL, ADAMS, SEBRING and BARNS, J. J., concur.

BUFORD, J., dissents.