LUCKIE, CHARLES A., Associate Judge.
This is an appeal from a decree in a suit brought by the appellants against the City of Tampa, wherein it was sought to enjoin the City from enforcing certain flat sum ■license taxes and a gross receipts tax imposed by City ordinance against appellants. .All parties moved for a summary final de,cree and jointly conceded that there was no genuine issue as to any material facts. The lower court granted the motion of the defendant City, upheld the City ordinance and, in substance, directed the appellants to pay the taxes levied. From this decree . appellants .have appealed.
The appellant Armstrong is a salaried employee of Avon Products, Inc., a New York corporation engaged in the manufacture and sale of cosmetics. Avon has manufacturing plants in several cities and has branch offices throughout the country, one of the branch offices being in Atlanta, Georgia. Avon sells its products through sales representatives, or solicitors, and does not sell through retail stores. All appellants, except Mrs. Armstrong, are sales representatives, or solicitors, engaged in house to house selling of Avon products in the City of Tampa, and have been regularly engaged for periods ranging from one and one-half years to ten years. The appellant, Mrs. Armstrong, resides in Tampa. The other appellants reside either in Tampa or some other place in Hillsborough County.
Avon maintains an office in Tampa under the supervision of Mrs. Armstrong, whose main function is to employ and train district managers, who in turn recruit, train and supervise solicitors. Certain Avon products are maintained in the Tampa office, but only for display and training purposes and no sales transactions, handling of orders, or delivery of products taires place through that office, nor does appellant Armstrong take any part in such transactions. No books of account are kept in the Tampa office relating to the sales, but all sales are handled directly by the sales representatives, or solicitors, with the Atlanta office. An advertisement is occasionally run on a Tampa TV station, but 'is not localized in character. In addition, Mrs. Armstrong places periodic advertisements in Tampa newspapers seeking sales representatives for Avon products. By a division of the county area, mainly the City of Tampa, Avon has territory available for 272 solicitors in Hillsborough County. During the year 1956, the year ■before this suit was started, Avon did approximately $230,000 worth of business in the Tampa area.
The individual sales representatives who solicit orders for Avon products from door *295 to door are not employees of Avon, nor do they have any authority or power to incur any debt, obligation or liability, or to make any representation or contract on behalf of Avon. They obtain orders from the customer who signs her name to the order, which states that she has ordered the products through the Avon representative, and upon delivery of the goods will pay therefor. On the reverse side of the order blank is a guarantee by Avon that the product will be delivered from the Avon Laboratories direct to the customer and if for any reason the products are not satisfactory, Avon will refund the purchase price. After obtaining several orders, the sales representative consolidates all orders into a single order without reference to which customer ordered which articles. The consolidated order is then transmitted to Avon’s Atlanta office, upon receipt of which the Atlanta office makes up and ships by common carrier to the individual sales representative one package containing all the articles enumerated, without separation as to individual purchasers. Upon receipt of the shipments, the sales representative opens the package and selects from the mass of articles therein the several articles called for on individual orders and personally delivers the same to each purchaser, collecting the purchase price, retaining her commission and remitting the remainder to Avon’s Atlanta office.
Appellants contend by their Complaint and by this appeal that, as applied to them, the taxing ordinance would be vio-lative of Article I, Section 8 and Article IV, Section 2 of the Constitution of the United States and Section 1 of the Fourteenth Amendment to the Constitution of the United States and Section 1 of the Declaration of Rights of Florida, F.S.A. By the final decree the Chancellor concluded that the activities of the appellants were legitimately subject to the payment of the occupational license taxes, the ordinance was held valid and the Complaint was dismissed.
Appellants contended before the lower court and contend on this appeal that they' are solicitors engaged in interstate business and commerce and are, therefore, exempt from the license taxes sought to be imposed, because such flat sum license taxes impose a direct and substantial burden on interstate commerce, and further, such taxes imposed upon the appellants constitute a discrimination against interstate commerce and in effect lay a much heavier burden against the appellants than is laid against local or intrastate competitors.
The many conflicting decisions on the subject of taxation and regulation of interstate commerce by the various political subdivisions below the level of the Federal Government have left much to be desired in the way of precise guides for state and municipal taxing authorities. It was once the view that the “drummer” cases decided by the United States Supreme Court (beginning with Robbins v. Taxing District of Shelby County, 120 U.S. 489, 7 S. Ct. 592, 30 L.Ed. 694) entirely prohibited the licensing by local governments of persons engaged in interstate commerce. That view has been clarified and explained by su^equent decisions of the United States Supreme Court to mean that while interstate commerce may not be hindered by discriminatory taxes, or taxes tending to suppress it, such commerce may, by nondiscriminatory tax, be required to pay its just share of local government, which tax may be focused on a local activity not itself interstate commerce. McGoldrick v. Berwind-White Coal Co., 309 U.S. 33, 60 S. Ct. 388, 84 L.Ed. 565; Nelson v. Sears Roebuck & Co., 312 U.S. 359, 61 S.Ct. 586, 85 L.Ed. 888; and Nippert v. Richmond, 327 U.S. 416, 66 S.Ct. 586, 90 L.Ed. 760. These cases recognized that regular and continuous activity in the same state, particularly by residents of the state, is such a local incident constituting “doing business” in the state which may be taxed.
Though the facts are not pertinent, in the case of McGoldrick v. Berwind-White Coal Co., 309 U.S. 33, 60 S.Ct. 388, 391, 84 *296 L.Ed. 565, the Supreme Court of the United States had some quite pertinent comments to make on the subject of taxation of interstate commerce, among which comments appear the following:
“In imposing taxes for state purposes a state is not exercising any power which the Constitution has conferred upon Congress. It is only when the tax operates to regulate commerce between the states or with foreign nations to an extent which infringes the authority conferred upon Congress, that the tax can be said to exceed constitutional limitations. See Gibbons v. Ogden, 9 Wheat. (US) 1, 187, 6 L.Ed. 23, 68; South Carolina State Highway Dept. v. Barnwell Bros., 303 U.S. 177, 185, 58 S.Ct. 510, 513, 82 L.Ed. 734, [738], Forms of state taxation whose tendency is to prohibit the commerce or place it at a disadvantage as compared or in competition with intrastate commerce and any state tax which discriminates against the commerce, are familiar examples of the exercise of state taxing power in an unconstitutional manner, because of its obvious regulatory effect upon corqf merce between the states.
“But it was not the purpose of the commerce clause to relieve those engaged in interstate commerce of their just share of state tax burdens, merely because an incidental or consequential effect of the tax is an increase in the cost of doing the business, Western Live Stock v. Bureau of Revenue, 303 U.S. 250, 254, 58 S.Ct. 546, 548, 82 L.Ed. 823, [826], 115 A.L.R. 944. * * Non-discriminatory taxation of the in-strumentalities of interstate commerce is not prohibited.”
Thus, it appears that if a tax does not aim at or discriminate against interstate commerce it may properly be levied. Where the tax is laid upon every person so engaged, whether intrastate or interstate, and is not otherwise objectionable the tax is perfectly proper. But, in levying such taxes, the local governmental body must take care that interstate commerce is kept free of burdensome or discriminatory taxes, and they cannot subject interstate commerce to multiple taxation, or to taxation which would tend to erect a barrier around their borders preventing commerce an entry, and neither can they regulate or tax interstate commerce to provide a direct commercial advantage to local business. The mere fact that merchandise has been transported in interstate commerce and thereafter brought to its journey’s end does not forever prohibit taxation by a local taxing authority. There seems, therefore, to be no question but that a state or municipality has the right to levy taxes requiring interstate commerce to carry its fair share of the costs of state or municipal government in return for the benefits it derives within their boundaries. See the recent case of Northwestern States Portland Cement Co. v. Minnesota, 358 U.S. 450, 79 S.Ct. 357, 364, 3 L.Ed.2d 421, wherein it is also said:
“* * * it is axiomatic that the founders did not intend to immunize such commerce from carrying its fair share of the costs of the state government in return for the benefits it derives from within the State.”
Clearly the taxing power of the municipality is not unconstitutional simply because it has some effect on interstate commerce; it is only unconstitutional where it is discriminatory in character, or where it impedes such commerce, or. where it amounts to multiple taxation. There is no magic inherent in the name ‘interstate commerce’ ; only the effect of the operation of the tax is important.
Neither is there any prohibition against the taxation of solicitors, or sales representatives. In discussing the subject of taxing solicitors, the Supreme Court of the United States in the case of Nippert v. *297 Richmond, supra, said [327 U.S. 416, 66 S.Ct. 591]:
“* * * we put aside any suggestion that ‘solicitation,’ when conducted regularly and continuously within the state, so as to constitute a course of business, may not be ‘doing business’ * # i|:
* * * * * *
“There is no lack of power in the state or its municipalities to see that interstate commerce bears with local trade its fair share of the cost of local government, more especially in view of recent trends in this field. * * * The problem comes down therefore to whether the state or municipal legislative bodies in framing their taxing measures to reach interstate commerce shall be at pains to do so in a manner which avoids the evils forbidden by the commerce clause and puts that commerce actually upon a plane of equality with local trade in local taxation, not as is said to a question of whether interstate trade shall bear its fair share of the cost of local government, the benefit and protection of which it enjoys on a par with local business.”
It was pointed out in the Nippert case that since appellant worked for an out-of-state firm, and the record contained nothing to show her presence in Richmond at any time other than during the one 5-day period, or any intention to return, whether periodically or casually, no presumption could arise that she was a resident of Richmond or was regularly engaged in solicitation there. The case, therefore, fell squarely within the rule announced in the “drummer” cases.
Although there are earlier cases in Florida (Cason v. Quinby, 60 Fla. 35, 53 So. 741; Wilk v. Bartow, 96 Fla. 186, 97 So. 307), our Supreme Court, in the later case of Dorsett v. Overstreet, 154 Fla. 566, 18 So.2d 759, 155 A.L.R. 228, recognized the modern trend that it was not the purpose of the commerce clause to relieve those engaged in interstate commerce from their just share of state tax burdens even though it increased the cost of doing business, since interstate business must pay its own way. In the last cited case it appeared from the opinion that plaintiff-appellant was a citizen and resident of Florida and “was ail agent engaged in interstate commerce; that he sold merchandise by sample, accepted written orders, transmitted the same to nonresident manufacturers where the orders were filled, and merchandise shipped to the customers in Florida by interstate commerce. ‘That plaintiff’s business is that strictly of an agent operating under the commerce clause of the Federal Constitution; he is exempt from any and all license taxes or fees’.” Plaintiff sought to escape a $10.00 occupational license feei The lower court sustained the tax, and the ruling was affirmed on appeal.
In the instant case the tax is assessed against everyone who falls-within the clas^ sification of “Brokers, merchandise brokers, commission merchants, manufacturers, wholesalers’ or brokers’ agent, or agents for the sale of merchandise not otherwise classified.” The license is equally applicable to everyone who engages in such business, whether intrastate or interstate; there is no effort to single out interstate business or to in any way discriminate against or burden interstate commerce, nor can it be said that intrastate business is favored in any way. The tax is directed against the occupations listed and not the nonresident principals of such persons. The tax is against those local residents who continuously and systematically solicit orders from other local residents. Undoubtedly there are numerous other persons, firms and corporations residing in Tampa paying the tax; the appellants, who are solicitors or sales representatives, are potential competitors of those several firms paying such taxes to support the cost of government of the City of Tampa, from which they all receive benefits. Appellants are not discriminated against but occupy exactly the same position as persons similarly engaged in intrastate commerce.
*298 The person who seeks to establish an exemption from taxation paid by others has the burden of establishing by clear evidence and law that he is entitled to such exemption. In the case of Robinson v. Fix, 113 Fla. 151, 151 So. 512, our Supreme Court said:
“Those who seek shelter under an exemption law must present a clear case, free from all doubt, as such laws, being in derogation of the general rule, must be strictly construed against the person claiming the exemption and in favor of the public.”
Appellants have not met the burden cast by law upon them and the Chancellor will be affirmed.
Affirmed.
ALREN, Acting Chief Judge, and SHANNON, J., concur.