THORNAL, Justice.
J3y petition for certiorari we are requested to review a decision of the District Court of Appeal, Second District, 112 So.2d 293, on account of alleged conflicts with prior decisions of this Court.
We must determine whether a municipal flat sum license or privilege tax and a graduated gross receipts license or privilege tax unduly burden interstate commerce, when applied to the business conducted by the petitioners.
The factual situation is clearly delineated in the opinion of the Court of Appeal. For coherence, we mention that petitioner Armstrong is the Tampa area supervisor of Avon Products Incorporated, a New York corporation, with a branch outlet in Atlanta, Georgia. The other petitioners are independent solicitors who are not employees of Avon. They solicit sales of Avon products from door to door in Tampa. Each Tampa solicitor combines several orders and the products are shipped by Avon from Atlanta via common carrier. Customarily a number of orders are shipped in one package to the Tampa solicitor, she in turn opens the package, delivers the product to each customer, collects the purchase price, retains her commission and remits the remainder to Avon’s Atlanta office. The solicitors also collect the Florida sales tax for each item, remit the same to Avon, which in turn remits to the State of Florida. All petitioners are residents of Tampa or surrounding areas in Hillsborough County.
The City of Tampa, by ordinance, requires the payment of an annual flat sum license or privilege tax of $50 by brokers or agents for the sale of merchandise not otherwise classified by the ordinance. In addition, the city imposes a license or privilege tax on every retail merchant “measured by the amount of gross sales made by such merchant * * The merchant is required to file an annual report of gross sales made in the City of Tampa. The amount of this tax is $10 on the first $3,000 or less of gross sales and $1 on each $1,000 of gross sales or a major fraction thereof above $3,000. The city insists that petitioners should pay both of these privilege taxes.
Petitioners Armstrong, et al., sought an injunction against the collection of the two *198 taxes. The Chancellor was of the view that the act of solicitation constituted a “separable intrastate incident” which would support the imposition of both privilege taxes. See Armstrong v. City of Tampa, Fla., 106 So.2d 407. The Court of Appeal did not undertake to isolate the so-called “separable intrastate incident.” On the other hand, that court, while apparently recognizing the interstate character of the petitioners’ business, leveled its conclusion approving both taxes on the broad proposition that there has been a liberalization of the historic restraints against local burdens on interstate commerce. Relying on several recent decisions, by which it has been stated that interstate commerce can be required to carry its fair share of the cost of local government by a tax not otherwise objectionable, the Court of Appeal proceeded to the conclusion that the instant taxes were collectible under the later cases. By the opinion now submitted for review, the Court of Appeal stated [112 So.2d 296] “it appears that if a tax does not aim at or discriminate against interstate commerce it may properly be levied.” It was further stated that the assertion of the taxing power by the municipality “is only unconstitutional where it is discriminatory in character, or where it impedes such commerce, or where it amounts to multiple taxation.” The Court of Appeal affirmed the Chancellor.
Petitioners ask us to review by certiorari the decision of the Court of Appeal because of an alleged conflict with our prior decision in Olan Mills, Inc. v. City of Tallahassee, Fla., 100 So.2d 164, and similar cases discussed in their brief. Article V, Section 4, Florida Constitution, F.S.A.
Being dubious of the proper appellate procedure and commendably out of an abundance of caution, petitioners also filed a notice of appeal to review the decision by appeal on the theory that the Court of Appeal initially construed a controlling provision of the Federal Constitution. Article V, Section 4, Florida Constitution.
We have taken jurisdiction via the cer-tiorari route because of the alleged conflict of decisions. When this matter was previously before us, 106 So.2d 407, we transferred it to the Court of Appeal for the reason that the Chancellor had not construed a controlling provision of the Federal Constitution. To dispose of this matter, therefore, we must look to the decision under review and measure it against the backdrop of our own prior decisions to ascertain whether the alleged conflicts are present.
Petitioners contend that our prior decisions condemn a flat sum privilege or license tax when imposed on one engaged in interstate commerce. They further assert that the taxing ordinance in question in effect imposed two flat sum privilege taxes.
The respondents contend that the taxes here are non-discriminatory and that the regular and continuous solicitation carried on by petitioners constitutes doing business which in itself is a separable intrastate incident that supports the instant levy.
We think it is of some significance that the decision of the Court of Appeal, 112 So.2d 293, fails to include any reference to the decision of this Court in Olan Mills, Inc. v. City of Tallahassee, Fla., 100 So.2d 164, the prior decision with which the Court of Appeal’s decision is allegedly in conflict.
We are in accord with the opinion of the Court of Appeal where it is stated that “the many conflicting decisions on the subject of taxation and regulation of interstate commerce by the various political subdivisions below the level of the Federal Government have left much to be desired in the way of precise guides for state and municipal taxing authorities.” We must confess that our own prior decisions have in a measure made some contribution to the confusion. Our independent research in the instant matter has led us to the conclusion that these conflicts in our opinions should here'and now be resolved. Billingham v. Thiele, Fla., 109 So.2d 763.
*199 Artice I, Section 8, Constitution of the United States, empowers the Congress “ * * * to regulate Commerce with foreign Nations, and among the several States * * The obvious purpose of the quoted provision was to assure the free and unimpeded transportation and exchange of goods between the states. The courts have construed the constitutional provision as one prohibiting regulation of interstate commerce by the states. Implicit in the grant of power to the Congress is the prohibition of the exercise of the same power by the states. As the provision has been interpreted over the years, it has been construed to mean that the states are precluded from imposing any undue or unreasonable burden on interstate commerce. Circular Advertising Co. v. American Mercantile Co., 66 Fla. 96, 63 So. 3. Undue burdens can arise, not only as a result of the exercise of the police power, but with equal effectiveness as a result of the exercise of the taxing power. The cases suggest that the states and their local units of government most often undertake to regulate interstate commerce by the exercise of some aspect of the taxing power.
The sum of the cases simply is that if the local tax has the effect of excluding or precluding or impeding the flow of commerce into and between the states then the tax is offensive to the quoted constitutional provision. In other words, if the particular tax is “exclusory” of interstate commerce or the conduct of commerce between the states it cannot stand. This is so even though it might not be discriminatory in nature or aimed at interstate commerce for the benefit of intrastate commerce. The fact that such a tax is discriminatory is fatal to its enforcement. However, it can constitute an illegal burden even though non-discriminatory as between interstate and intrastate commerce if the effect on the former is exclusory or unduly burdensome.
In sustaining the fixed sum license or privilege tax the decision of the Court of Appeal collides directly with the prior decision of this Court in Olan Mills, Inc. v. City of Tallahassee, Fla., 100 So.2d 164.
In the cited case we held that a fixed sum license tax imposed upon photographers as a condition to exercising the privilege of engaging in that business was un-collectible from solicitors representing a non-resident photographer whose business constituted interstate commerce. The fact that the ordinance without discrimination assessed the tax against local photographers as well as solicitors for the nonresident concern did not save it against the contention that it was an undue burden on interstate commerce. The effect of our holding in the last Olan Mills case simply was that the city could not carve out of the interstate process the incident of solicitation as a separate and distinct aspect of the transaction upon which the tax' could be imposed. We held that the solicitation constituted an inseparable link in the chain of events. The flat sum license impost was held to be a direct tax upon the privilege of engaging in interstate commerce. It had to fall.
We can detect no basic distinction between the flat sum license tax attempted to be imposed upon the solicitors in Olan Mills, Inc. v. City of Tallahassee, supra, and the flat sum license tax which Tampa attempts to impose upon the solicitors who sell Avon products. Both are flat sum privilege taxes. Although both appear to be non-discriminatory, it is perfectly clear that in each instance the tax is exclusory of interstate commerce for the simple reason that it must be paid as a condition precedent to engaging in such interstate commerce. Another burdensome aspect of this type of privilege tax is the fact that it is subject to being duplicated by every community entered by the solicitors who are engaging in the interstate transaction. For all of these reasons we were compelled to strike down the flat sum privilege tax in Olan Mills, Inc. v. City of Tallahassee, supra. For the same reasons, which we fear the District Court of Appeal must *200 have overlooked, we are now compelled to disagree with that Court and strike down the $50 flat sum privilege tax sought to be imposed by the City of Tampa.
The last Olan Mills case was not the first in which this court held flat sum privilege taxes imposed by municipalities to be unduly burdensome on interstate commerce and, therefore, invalid. In Cason v. Quinby, 60 Fla. 35, 53 So. 741, a flat sum privilege tax ordained by the City of Lake City was held uncollectible from the traveling salesman of a non-resident aluminum company. He carried on almost identically the same type of activity as did the solicitors for Avon in the instant case. Similarly, in Wilk v. City of Bartow, 86 Fla. 186, 97 So. 307, we held a flat sum privilege tax ordinance of the City of Bartow unenforceable against the well-known Fuller Brush solicitor. In Myers v. City of Miami, 100 Fla. 1537, 131 So. 375, the City of Miami was held to be without power to collect a flat sum privilege tax from the Real Silk Hosiery solicitors whose conduct was essentially similar to that of the Avon solicitors in the case at bar.
In the Florida cases which we have mentioned above we have relied on the decisions of the Supreme Court of the United States typified by Robbins v. Taxing District of Shelby County, 120 U.S. 489, 7 S. Ct. 592, 30 L.Ed. 694; Real Silk Hosiery Mills, Inc. v. City of Portland, 268 U.S. 325, 45 S.Ct. 525, 69 L.Ed. 982; Memphis Steam Laundry Cleaner, Inc. v. Stone, 342 U.S. 389, 72 S.Ct. 424, 96 L.Ed. 436; West Point Wholesale Grocery Co. v. City of Opelika, 354 U.S. 390, 77 S.Ct. 1096, 1 L.Ed.2d 1420; Best & Co. v. Maxwell, 311 U.S. 454, 61 S.Ct. 334, 85 L.Ed. 275, and the leading case of Nippert v. City of Richmond, 327 U.S. 416, 66 S.Ct. 586, 90 L.Ed. 760.
By its opinion the District Court of Appeal appears to have undertaken to avoid the impact of these decisions by what -it senses to be an apparent trend in the cases extending opportunities of local units of government to impose tax burdens on various aspects of interstate commerce. While we must confess that in recent years we have noted with increasing frequency the expression that the Federal Constitution does not preclude interstate commerce from carrying its fair share of the cost of local government, we have not found any case in which an exclusory local flat sum privilege tax has been enforced against interstate commerce as a condition precedent to entry into a particular state or community. None has been suggested by respondent. In fact, its brief is peculiarly lacking in authority to support its position on this point.
The District Court of Appeal did mention some of the earlier Florida cases which we have pointed out above, but concluded that the rule of those cases had been severely shaken by the so-called “modern trend” expanding the taxable areas available to state and local governments.
In fairness to the Court of Appeal which relied in some measure on the prior decision of this Court in Dorsett v. Overstreet, 154 Fla. 566, 18 So.2d 759, 155 A.L.R. 228, we think we should make note of the fact that the last cited case was not mentioned by this Court in the later case of Olan Mills, Inc. v. City of Tallahassee, supra. An examination of the briefs in Olan Mills reveals that the parties neglected to bring to the attention of the Court the earlier decision in Dorsett v. Overstreet, supra, which is completely inconsistent with all of the Florida cases on the subject. We do now what we would have done then had the matter been presented. Reference to Dorsett v. Overstreet, supra, will reveal that on the original disposition of the case the majority of this Court struck down (by a 4-3 vote) a fixed sum privilege tax on the authority of the earlier Florida and Federal cases. On rehearing, the bare majority shifted and the tax was sustained by an opinion which took no regard whatever for the earlier precedents. The rule of Dorsett v. Overstreet, *201 supra, is clearly inconsistent with the rule of this Court in Olan Mills, Inc. v. City of Tallahassee, supra. The writer has tried in vain to find a decision to support it. There is none. In order to eliminate doubt on the subject we now specifically recede from the majority opinion on rehearing in Dorsett v. Overstreet, supra. Anything therein contrary to this opinion and our opinion in Olan Mills, Inc. v. City of Tallahassee, supra, is hereby held for naught.
In sustaining the graduated gross receipts tax against the assault that it was merely another fiat sum privilege tax we think the Court of Appeal ruled correctly. The cases cited as indicative of the so-called “modern trend” toward imposing upon interstate commerce a fair and reasonable responsibility to aid in supporting the cost of local government, the Court of Appeal actually relied on cases which, in our view, tend to support the instant gross receipts levy although they do not support the arbitrary flat sum privilege tax. There is a vast difference between the two. The gross receipts levy is based on the gross receipts obtained in the community at the termination of the interstate journey of the commodity. It is not a condition precedent to entry into the community by the interstate traveler. It is not duplicable by any other community because it is calculated entirely on the basis of the product of the transportation in the City of Tampa. It is a type of non-discriminatory tax apportioned on a reasonable basis and calculated in proportion to the amount of business done. This type of tax has been sustained by the later cases.
We are not here confronted by the imposition of a gross receipts levy collected from the proceeds of interstate traffic in the sense of those cases where a local agency of government has undertaken to extract from an interstate business the proceeds of sales or transactions carried on in other states. This cannot be done. Railway Express Agency, Inc. v. Commonwealth of Virginia, 347 U.S. 359, 74 S.Ct. 558, 98 L.Ed. 757; Spector Motor Service, Inc. v. O’Connor, 340 U.S. 602, 71 S.Ct. 508, 95 L.Ed. 573; Gwin, White & Prince v. Henneford, 305 U.S. 434, 59 S.Ct. 325, 83 L.Ed. 272. This is not an effort to collect a tax on the proceeds of the sale of a commodity which is transported into the state in one continuous unbroken channel of interstate commerce. Gay v. United Gas Pipe Line Co., 159 Fla. 659, 32 So.2d 600.
Our conclusion regarding the gross receipts levy here is influenced by International Harvester Co. v. Department of Treasury, 322 U.S. 340, 64 S.Ct. 1019, 1021, 88 L.Ed. 1313. The Supreme Court of the United States there sustained, among other levies, a gross receipts tax on sales to Indiana users, goods which were shipped from outside Indiana to customers in that state pursuant to previously agreed upon arrangements. The tax was described as “a privileged tax upon the receipt of gross income.” Applying the principle of the sales tax cases, the Supreme Court of the United States held that the taxable transaction occurred at the final stage of an interstate movement and the tax is on gross receipts from the completed interstate transaction. The consummation of the transaction was an event which occurred within the situs of the taxing state and this endowed that state with the authority to levy and collect the impost.
International Harvester Co. v. Department of Treasury, supra, was grounded on the opinion of the United States Supreme Court in Felt & Tarrant Mfg. Co. v. Gallagher, 306 U.S. 62, 59 S.Ct. 376, 83 L.Ed. 488, where the California use tax was upheld. Since that decision use taxes generally have been sustained on the theory that the interstate journey of the property has terminated and the privilege of using or storing it may be subjected to a nondiscriminatory use tax. For similar reasons the Supreme Court of the United States sustained the New York City sales tax in McGoldrick v. Berwind-White Coal Mining Co., 309 U.S. 33, 60 S.Ct. 388, 84 *202 L.Ed. 565. This is one of the basic opinions upon which the validity of state sales taxes is supported. It is cited by the Court of Appeal as indicative of the so-called trend indicating areas of legitimate taxation of interstate activities. In McGoldrick the sales tax was held to be collectible because it was conditioned upon activities occurring in New York, either in the form of the transfer of title or transfer of possession of purchased property which had ended its interstate travel. The consummation of the transaction in New York constituted a sufficient local event to support the levy. It was noted that forms of state taxation which have a tendency (1) to prohibit interstate commerce, or (2) place it at a disadvantage in competition with intrastate commerce, or (3) which amounts to the requirement of a condition precedent to engaging in interstate commerce, or (4) which is of the type that may be duplicated in every community through which the interstate activity passes, are all typical of those forms of taxation which cannot be sustained. Taxes measured by the proceeds of the sale of the commodity at the termination of the interstate journey are not exclusory, they do not preclude the interstate engagement and they are not collectible until the interstate aspects of the transaction have come to an end.
In Western Live Stock v. Bureau of Revenue, 303 U.S. 250, 58 S.Ct. 546, 82 L.Ed. 823, 115 A.L.R. 944, the Supreme Court of the United States sustained a state license privilege tax measured by the gross receipts received by a magazine publisher from the sales of space to advertisers even though the magazine circulated outside as well as inside the state. Recognizing that the tax was not one which was capable of repetition elsewhere but was fairly apportionable to the volume of business done the tax was upheld. In the early case of American Mfg. Co. v. City of St. Louis, 250 U.S. 459, 39 S.Ct. 522, 63 L.Ed. 1084, a city gross receipts privilege tax computed on the amount of sales of goods manufactured in the city, whether sold interstate or intrastate was held to be a legal method of fixing the tax on the privilege. Taking note of the practical operation and effect of the levy, the Court observed that it was eminently fair and just inasmuch as payment was delayed until the manufacturer realized on the result of his work.
The District Court of Appeal referred to the recent decision of the Supreme Court of the United States in Northwestern States Portland Cement Co. v. State of Minnesota, 358 U.S. 450, 79 S.Ct. 357, 3 L.Ed.2d 421, 67 A.L.R.2d 1292. This decision was mentioned by that Court to support its basic theory in the instant case to the effect that the Commerce Clause was never intended to completely immunize interstate commerce against a fair share of responsibility to support the state government in return for benefits received therefrom. This most recent pronouncement by the highest court in the land, appears to us to add further support to the conclusion which we here reach to the effect that the completion of the transaction in the City of Tampa was a sufficient intrastate incident at the terminal point of the interstate journey to support the imposition of the tax on the basis of gross receipts which resulted from the terminal local transaction. There is nothing in this gross receipts tax that constructs a barrier at the state border against the entry of interstate commerce. There is certainly no direct interference with the free flow of commerce into the State of Florida. The tax, incidentally, is collected from local residents who engage in continuous business activities locally and who derive substantial benefits from local government. In this posture it can hardly be successfully contended that the tax based on gross receipts thus locally obtained is in any fashion a compulsion upon Avon to pay the tax as a condition precedent to the exercise of the privilege of engaging in interstate commerce.
Further evidence of the validity of our present position will be found in Railway *203 Express Agency, Inc. v. Commonwealth of Virginia, 358 U.S. 434, 79 S.Ct. 411, 3 L.Ed. 2d 450. There a Virginia franchise tax levied against a railway express company and measured by its gross receipts from transportation within the state of express transported through, into or out of the state was held to have been fairly apportioned. It was upheld against the assault that it did violence to the commerce clause and the due process clause of the Constitution of the United States.
One of the strongest recent supports for the judgment which we here reach is the decision of the Supreme Court of Pennsylvania in Keystone Metal Co. v. City of Pittsburgh, 374 Pa. 323, 97 A.2d 797, certiorari denied 346 U.S. 887, 74 S.Ct. 139, 98 L.Ed. 391. There the City of Pittsburgh imposed an annual mercantile license tax of one mill on the taxpayers’ gross volume of business computed on the gross receipts of the preceding year. As we have attempted to do herein, the Supreme Court of Pennsylvania reviewed practically all of the applicable decisions of the Supreme Court of the United States. Also, as we have done, the Pennsylvania court arrived at the conclusion that when viewed as a whole interstate commerce may consist of a series of intrastate events. When a local tax is levied upon local incidents which do not establish conditions precedent to the entry of commerce into the taxing state, then the local incidents may be and often are sufficient local jurisdiction contacts to validate the tax. This is so even though the entire transaction from which the local incident arises may have .related interstate attributes. We commend to those interested the opinion of the Supreme Court of Pennsylvania in the case last cited. It presents a clear-cut judicial summary of the authorities which on the one hand condemn the flat sum privilege tax which excludes interstate commerce. On the other hand, it summarizes those authorities which support a graduated gross receipts license tax which permits interstate commerce to move without restraint and to flourish between the states but at the sáme time share the cost of local government in proportion to benefits which it derives therefrom. See also Martin Ship Service Co. v. City of Los Angeles, 34 Cal.2d 793, 215 P.2d 24.
So it is in the instant case the annual tax measured by the gross receipts from the sale of Avon products in the City of Tampa is directly proportionate to the amount of the sales. It does not intercept commerce in its interstate journey. The journey is ended before the tax is collectible. It is not susceptible of duplication by other communities. It is non-discriminatory as between local business and the out-of-state manufacturer. Tested by all of the .rules developed in the cases we think the Tampa graduated gross receipts privilege tax is not offensive to the Federal Constitution. Article I, Section 8, Constitution of the United States.
We do not overlook the contention of the petitioners that the initial $10 requirement on the first $3,000 of gross sales is in their view a flat sum license tax. We think it is not because in practical operation and effect it is necessary to have some rate or method of calculating the tax. Furthermore, it is not collectible, at all events, but only in the event that the petitioners engage in business in Tampa and complete their sales transactions there. In other words, it is not a condition precedent to the entry of the interstate commodity into the City of Tampa. It is merely a reasonable basis for fixing a .rate of taxation to be paid on the ultimate local transaction. This is the practical operating effect of the tax. The label affixed to it by the ordinance is not conclusive as to its trae nature.
Finding as we do that the District Court of Appeal handed down a decision which conflicts with a prior decision of this Court on the same rule of law in regard to the flat sum $50 privilege tax levied by the City of Tampa, the writ is issued and as to that, holding the decision of the Court of Appeal is quashed. To the extent that the *204 decision sustains the graduated gross receipts tax, the writ is discharged. For the foregoing reasons the cause is remanded to the District Court of Appeal, Second District, for entry of a judgment consistent with this opinion.
It is so ordered.
THOMAS, C. J., TERRELL, HOBSON, ROBERTS, DREW and O’CONNELL, JJ., concur.