Mr. Guy L. Carlton Collier County Tax Collector Courthouse — Building C Naples, Florida 33942
Martin E. Roepstorff Supervisor of Occupational Licenses Collier County
Dear Mr. Carlton:
This is in response to your request for an opinion on substantially the following question:
 CAN COLLIER COUNTY REQUIRE LOCAL SALES REPRESENTATIVES, DISTRIBUTORS, OR AGENTS OF NATIONAL MANUFACTURING AND/OR DISTRIBUTING OR SALES ORGANIZATIONS ENGAGED IN INTERSTATE COMMERCE TO OBTAIN A COUNTY OCCUPATIONAL LICENSE (PAY AN OCCUPATIONAL LICENSE TAX) IF THE PRODUCTS SOLD ARE DISTRIBUTED AND TRANSPORTED IN INTERSTATE COMMERCE, BUT THE SOLICITATION, SALES, AND DELIVERY OCCUR WITHIN THE COUNTY?
Supplemental materials furnished by you to our office indicate that the manufacturing or distribution or sales organizations involved are in the business of manufacturing and/or distributing and selling cosmetics, household cleaners, and other unspecified products in interstate commerce. One such organization (the only one which you describe) markets its products through independent contractor salespeople called `beauty consultants' who use a `party plan' sales program. `Beauty Shows' are held in the home of a friend or neighbor of the company's `beauty consultant' or sales representative who attends as one of the invited guests, demonstrates the products, and takes orders from those in attendance. No details have been furnished as to where and by whom the orders so taken are accepted or approved and the sales contract consummated but presumably this occurs at a place out of the State of Florida. The national sales organization describes its sales agents as `the medium through which our products are distributed in interstate commerce.'
Your occupational license tax ordinance (Collier County Ordinance No. 81-42) a copy of which you submitted to our office, is a duly enacted ordinance, presumptively valid, and our office cannot comment on its constitutionality, vel non or in its application, under the Commerce Clause of the United States Constitution.
Moreover, since your letter inquires about four different organizations (and you have furnished descriptive information concerning only one) and since each case must be decided on the basis of its own unique factual circumstances, our office will be unable to render an opinion to you regarding all of the sales organizations described in your letter. See, AGO 78-52 and 78-120. Additionally, even in regard to the above-described cosmetics manufacturing and distribution or sales organization, our office cannot resolve factual issues nor make any legislative or judicial findings of fact concerning the type and extent of local business activity or separable intrastate incidents, if any, engaged in by this organization. See, 1981 Annual Report of the Attorney General at p. viii; AGO's 78-120; 72-236. However our office can offer the following guidelines and legal opinion on the question of law
posed by your letter.
Section 205.032, F.S., provides in pertinent part:
 The governing body of a county may levy, by appropriate resolution or ordinance, an occupational license tax for the privilege of engaging in or managing any business, profession, or occupation within its jurisdiction. . . . (e.s.)
See also, s 205.022(1), F.S. (1982 Supp.) (defining `local occupational license'). Compare, s 205.032 with s 205.042, F.S., pertaining to the levy of an occupational license tax by municipalities, subsection (3) of which provides that such a tax may be levied on a person engaged in interstate commerce `if such license tax is not prohibited by s. 8. of Art. I of the United States Constitution.'
Attorney General Opinion 72-236 discussed newly enacted s 205.032, and concluded that it must be strictly construed in light of the general rule of law that taxing statutes are to be strictly construed against the taxing authority and liberally in favor of the taxpayer; applying the rule in Isern v. City of West Miami,244 So.2d 420 (Fla. 1971) this same opinion concluded that an activity may not be put under mandate of county revenue license if it is inseparable from a scheme of activity outside the licensingcounty's jurisdictional limits. Attorney General Opinion 72-236. See also, AGO 73-172 (concluding that there must be a sufficient nexus within the territorial limits of the county to render an activity taxable under s 205.032); AGO 63-21.
As a general rule, the states (or a political subdivision thereof) may not unduly burden or interfere with interstate commerce by taxing it, but the Commerce Clause does not operate to relieve those engaged in interstate commerce from their just share of the tax burden for benefits derived from the state or local government occasioned by separable local incidents or activities of such businesses. Attorney General Opinions 73-162, 63-21; see also, AGO 78-120 (concluding that unless a publisher — distributor engaged in separable and distinct local activities or incidents, otherthan solicitation and delivery, such a business would not be liable to taxation under s 205.042(3), and that an attempt to tax such solicitation and delivery would probably violate the Commerce Clause).
Attorney General Opinion 78-120 also states that the factual determination of what is separable from the scheme of interstate business activity is to be made in the first instance by localauthorities, but that a local government could not carve out of the interstate commerce in question the incident of solicitation as a separate aspect of the transaction upon which the tax could be imposed. See also, Isern, supra, Armstrong v. City of Tampa,118 So.2d 195 (Fla. 1960) (following the rule in Olan Mills, Incorporated v. City of Tallahassee, 100 So.2d 164 [Fla. 1958], cert. den., 359 U.S. 924 [1959], that a city could not carve out of the interstate process the incident of solicitation as a separate aspect of the transaction so that it could be taxed locally, and holding that a `flat sum' license tax imposed by Tampa on Avon Products solicitors was an unconstitutional burden on interstate commerce); Nippert v. City of Richmond, 327 U.S. 412
(1946); Annot., 162 ALR 857-883; see also, Davis v. Virginia,236 U.S. 697 (1915); Caldwell v. North Carolina, 187 U.S. 622 (1903); Annot., 48 L.Ed.2d 917, `Supreme Court's Views as to Constitutionality of State or Municipal Regulation of Peddlers, Drummers, Canvassers, . . .' and cases cited at pp. 924-928 thereof.
In view of the factual circumstances involved, I am unable to render a conclusive opinion on the authority of Collier County to impose an occupational license tax on the cosmetic manufacturing, distribution and sales business which is described above, since the Attorney General cannot resolve factual questions or mixed questions of fact and law nor make any legislative or judicial findings of fact. But, I can advise you that if there are sufficient separable local incidents of business activity carried on by this national organization or its local sales representative, and if these incidents are `separable' from or may be carved out of the interstate process discussed in the cases and opinions referenced above, then a county may impose an occupational license tax on the sales agent in question. However, as stated in AGO 78-120, unless separable and distinct local activities or incidents other than solicitation of orders for and delivery of the products within the county are engaged in, the rule laid down in Armstrong v. City of Tampa, supra, would probably control the instant issue.
In summary, it is my opinion that unless and until judicially determined otherwise, and in the absence of separable and local incidents or business activities, or activities other than solicitation of orders or delivery of products within the county, the latter of which are carried on in interstate commerce by a national sales organization or its sales representative, Collier County is not authorized by law to require such a local sales representative to obtain a county occupational license or pay an occupational license tax.
Sincerely,
Jim Smith, Attorney General
Prepared by: Anne Curtis Terry, Assistant Attorney General