529 So.2d 324 (1988)
City of TAMPA, Appellant/Cross-Appellee,
v.
CAROLINA FREIGHT CARRIERS CORPORATION, a North Carolina Corporation, Appellee/Cross-Appellant.
No. 87-2980.
District Court of Appeal of Florida, Second District.
July 29, 1988.
*325 Michael A. Fogarty, City Atty., Robert M. Larrinaga, and Thomas C. Saunders, Asst. City Attys., Tampa, for appellant.
Karen J. Prevatt of Cason, Henderson, Morrison, Prevatt and Baker, Tampa, for appellee.
RYDER, Acting Chief Judge.
The City of Tampa levied an occupational license tax on the Tampa transfer facility of Carolina Freight Carriers Corporation in the amount of $42.00 per year and on fifteen of Carolina Freight's vehicles in the amount of $30.00 per vehicle for the years 1982-1985. Carolina Freight refused to pay the tax, advising the City that it was a licensed interstate commerce carrier and, as such, exempt from local revenue taxes.
Following the attempted enforcement of the occupational license tax, Carolina Freight brought a declaratory and injunctive action in the court below. The trial court found that the transfer facility operation constitutes a "permanent business" and is therefore taxable under Tampa City Code section 20-2 and section 205.042, Florida Statutes (1985). However, the court concluded that the attempted assessment on the fifteen vehicles violates the Florida Constitution, section 205.063, Florida Statutes (1985), and the equal protection clause of the United States Constitution.
The City of Tampa appeals the portion of the trial court's order prohibiting the City from assessing the occupational license tax against the fifteen local tractor trailers. Carolina Freight cross-appeals the portion of the trial court's order allowing the City to assess the tax against the Tampa transfer facility. We affirm the lower court's prohibition on levying the tax against the tractor trailers and reverse the court's ruling allowing the tax to be assessed against the transfer facility.
Carolina Freight is involved in the business of interstate transportation of general commodities. Its corporate headquarters are located in Cherryville, North Carolina. The Tampa transfer facility is one of 140 such facilities located throughout the United States. Incoming shipments arrive at the Tampa facility on line-haul interstate tractor trailers. The shipments are then loaded onto local tractor trailers, which deliver the goods to customers in Tampa and in other areas in four nearby counties. The local tractor trailers also deliver to the facility outgoing freight, which is loaded onto interstate tractor trailers for transportation out of this state.
The transfer facility consists of a building in excess of 10,000 square feet, with thirty-seven dock doors and a 3,600 square foot administrative office area. There are thirty-eight full-time employees and seven part-time employees. The facility has twenty-seven local tractor trailers and two "straight" trucks. Fifteen of the local *326 tractor trailers operate on routes which are solely in the city of Tampa. The facility is open twenty-four hours a day, six days a week.
Payroll checks for the Tampa facility come from the home office in North Carolina and all accounts receivable are located there. No records pertaining to employee benefits are located in Tampa. Office supplies come from North Carolina.
The tax assessed against Carolina Freight is an open "flat tax" and is not based on receipts. The revenue from the tax goes into the general fund for the city of Tampa to support police, fire, water, sewer and other services. Carolina Freight pays ad valorem taxes on the Tampa facility.
We first address the tax on the local tractor trailers. We do not agree with the trial court's conclusion that the tractor trailers are exempt from local occupational license taxation under section 205.063. This section only exempts vehicles used "for the sale and delivery of tangible personal property at either wholesale or retail" from the taxpayer's place of business on which a license is paid. The trial court specifically found that the transfer facility does not engage in wholesale or retail sales of tangible personal property. This finding is at odds with the court's conclusion that the tractor trailers are exempt under section 205.063.
The trial court's reasoning is not binding upon this court, however, and we may affirm its decision if it can be supported under an alternative theory. U.S. Home Corp. v. Suncoast Utilities, Inc., 454 So.2d 601 (Fla. 2d DCA 1984).
Accordingly, we affirm on state preemption grounds. Article VII, section 1(a), Florida Constitution preempts to the state all forms of taxation other than ad valorem taxes on real estate or tangible personal property. Forms of taxation other than ad valorem must be specifically authorized by general law. Id. The legislature has enacted comprehensive general legislation having statewide application for the licensing of motor vehicles. See ch. 320, Fla. Stat. (1985); art. VII, § 1(b), Fla. Const. This preempts motor vehicle license taxes to the state. See § 320.0104(2), Fla. Stat. (1985).
The City contends that section 205.042 provides the necessary statutory authority for imposition of the occupational license tax on Carolina Freight's vehicles. We hold that this argument has no merit and does not warrant further consideration. Furthermore, having affirmed the lower court on state preemption grounds, we need not address the additional constitutional grounds for the trial court's decision.
We now turn to the tax on the transfer facility. Section 205.042 enables municipalities to levy an occupational license tax on any person maintaining a permanent business location or branch office within the municipality, or on any other person who transacts business in interstate commerce, provided the tax is not prohibited by article I, section 8 of the United States Constitution (the commerce clause).
We need not review the trial court's conclusion that the operation of the transfer facility constitutes a "permanent business" within the meaning of section 205.042 because we reverse on constitutional grounds. We hold that the application of the City's occupational license tax to Carolina Freight's transfer facility constitutes a sufficient burden on interstate commerce so as to violate the commerce clause. Armstrong v. City of Tampa, 118 So.2d 195 (Fla. 1960).
In Armstrong, the City of Tampa argued that it could impose both a flat-sum license or privilege tax and a tax based on gross receipts on local sales solicitors of Avon Products, Inc. The solicitors sold and delivered to local customers products shipped by Avon via an interstate carrier. The supreme court held that the flat-sum tax impeded the flow of interstate commerce and therefore violated the commerce clause because it was imposed on the solicitors as a condition precedent to engaging in interstate commerce. Id. at 199. The court reasoned that the tax unduly burdened interstate commerce because it was subject to being duplicated by every community into which Avon might enter. Id.
On the other hand, the court upheld the gross receipts tax because its imposition *327 occurred at the termination of the interstate journey. The court concluded that because the tax was calculated on the basis of gross receipts it was not subject to being duplicated in other communities. Id. at 201. In addition, the tax was held to be nondiscriminatory because the gross receipts calculation resulted in reasonable apportionment of the tax in proportion to the amount of business done in Tampa. Id.
Armstrong was decided prior to the formulation by the United States Supreme Court of a four-prong test to be applied to local privilege taxes in determining whether they violate the commerce clause. See Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977). Under this test, a local privilege tax does not violate the commerce clause when: (1) the tax is applied to an interstate activity with a substantial nexus with the taxing jurisdiction; (2) the tax is fairly apportioned; (3) the tax does not discriminate against interstate commerce; and (4) the tax is fairly related to the services provided by the state. Id.
Applying the four-prong test in the present case, we find that the City's occupational license tax, as applied to Carolina Freight's Tampa transfer facility, violates the commerce clause.
The tax fails the first prong, which requires a substantial nexus between the interstate business and the taxing jurisdiction. Carolina Freight's Tampa transfer facility merely handles inbound and outbound freight during its interstate movement. It is but one of many transfer stations which enable Carolina Freight, with its home office in North Carolina, to carry on the interstate transportation of goods. The City cannot carve out of the interstate process the incident of loading and unloading freight at the Tampa facility as a separate and distinct aspect of the business on which to impose a tax. Armstrong at 199. Local incidents such as gathering up or putting down interstate commodities as an integral part of their interstate movement are not adequate grounds for a state license, privilege or occupation tax. Railway Express Agency, Inc. v. Virginia, 347 U.S. 359, 74 S.Ct. 558, 98 L.Ed. 757 (1954).
The tax fails the second prong of the test, which requires that the tax be fairly apportioned between activities within and outside the taxing jurisdiction. A flat-sum tax, as Armstrong indicates, is by definition not apportioned. See Armstrong at 201-03.
The tax fails the third prong of the test because it discriminates against interstate commerce. The City imposes the occupational license tax as a prerequisite to doing business within its confines. This gives local carriers an unfair advantage, since Carolina Freight may be subject to occupational taxes in numerous other local jurisdictions. The burden of such multiple taxation can make the cost of interstate commerce prohibitively expensive. This creates a situation in which the local carrier is favored, to the detriment of free interstate commerce. Id. See also American Trucking Associations, Inc. v. Scheiner, ___ U.S. ___, 107 S.Ct. 2829, 97 L.Ed.2d 226 (1987); Armco Inc. v. Hardesty, 467 U.S. 638, 104 S.Ct. 2620, 81 L.Ed.2d 540 (1984).
The tax also fails the fourth prong of the test, since it is not fairly related to the services provided. Unlike a tax based on use or consumption, the City's flat-sum tax bears no relationship to Carolina Freight's presence or activities in Tampa. See Armstrong at 202; Commonwealth Edison v. Montana, 453 U.S. 609, 629, 101 S.Ct 2946, 2959, 69 L.Ed.2d 884, 902 (1981).
In summary, we find that the City's occupational license tax may not be levied on Carolina Freight's local tractor trailers in the absence of specific statutory authorization, since the licensing of motor vehicles has been preempted to the state. In addition, we find that the tax sought to be imposed on the Tampa transfer facility constitutes an undue burden on interstate commerce in violation of the commerce clause.
Affirmed in part; reversed in part.
HALL and PARKER, JJ., concur.